IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLIANCE FOR AUTOMOTIVE INNOVATION,<br><br>            Plaintiff,<br><br> v.<br><br>MAURA HEALEY, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS, in her official capacity,<br><br>            Defendant. | Civil Action No. 1:20-cv-12090 |

**ATTORNEY GENERAL'S MOTION IN LIMINE (<u>DAUBERT</u>) TO PRECLUDE EXPERT TESTIMONY THAT LACKS "FIT" WITH THE RECORD IN THIS CASE OR OFFERS OPINIONS ABOUT THE MEANING AND APPLICATION OF THE LAW**

    The plaintiff, the Alliance for Automotive Innovation, has proffered two expert witnesses: (1) Bryson Bort, whose proposed trial testimony appears at ECF #159-6; and (2) Daniel Garrie, Esq., whose proposed trial testimony appears at ECF #159-43.  In broad terms, each expert proposes to describe the design, architecture, and cybersecurity features of an abstract "modern vehicle."  Each expert then proposes to offer opinions about what the 2020 Right to Repair Law requires—premised, of course, on that expert's view of the meaning of the law—as well as opinions applying the law to identify specific steps that automobile manufacturers ("OEMs") would need to take, or would be forbidden from taking, to comply with the law.  Along the way, Garrie also offers opinions about what the federal Motor Vehicle Safety Act ("MVSA") and associated federal motor vehicle safety standards ("FMVSS") require.

    The Attorney General respectfully requests preclusion of two aspects of Bort's and Garrie's proposed testimony.  First, each expert's proposed testimony should be precluded to the extent it offers descriptions or opinions about OEMs and their vehicles other than General

Motors ("GM") and Fiat Chrysler Automobiles ("FCA")—topics on which there is no record evidence, and for which neither expert has been able to articulate any basis other than his ipse dixit.  See pp. 2-6 below.  Second, each expert's proposed testimony should be precluded to the extent it offers an opinion about the meaning or application of any law—including the 2020 Right to Repair Law, the MVSA, and the FMVSS.  See pp. 6-10 below.

   A. **Each Expert's Proposed Testimony Should Be Precluded to the Extent It Offers Descriptions or Opinions About Non-GM/FCA OEMs (and Their Vehicles).**

A proffered expert opinion, to be admissible, must be "based on sufficient facts or data." Fed. R. Evid. 702(b).  Beyond imposing minimal requirements on the quantity of data the expert must consider in forming his conclusions, Rule 702(b) also vouchsafes a proper fit, or "connection," "between the expert's data, his conclusions, and the facts of the case . . . ." Lawes v. CSA Architects & Eng'rs LLP, 963 F.3d 72, 99 (1st Cir. 2020).  "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen'l Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).  Such "[a]n analytical gap between the data and the opinion proffered may provide the basis for . . . exclusion." Lawes, 963 F.3d at 98.

Here, each expert's proposed testimony is rife with descriptions and opinions concerning non-GM/FCA OEMs and their vehicles[1]; indeed, there are precious few portions of either

---

[1] The portions of Bort's proposed testimony that offer descriptions or opinions about non-GM/FCA OEMs include paragraphs 16, 18-49, 54, 56, 59, 62 (second and third sentences), 64-65, 70 (last sentence), 74 (third and fourth sentences), 85-86, 87 (beginning at "which is not likely"), 91-92, 96-97, and 102 (second sentence).
   The portions of Garrie's proposed testimony that do so include paragraphs 7-9, 11-12, 19, 20, 21 (all but last sentence), 24-28, 32-39, 44, 57 (last sentence), 66, 70-73, 80-82, 85-86, 90, 93-95, 100-01, 103-05, 110, 113 (first sentence), 114, 122 (last sentence), 123 (all but first sentence).

expert's proposed testimony that focus solely on GM and FCA. The trouble is, there is no record evidence about any OEM other than GM or FCA. Indeed, the plaintiff ensured as much when, during discovery, it refused the Attorney General's requests to produce information concerning non-GM/FCA OEMs. See AG's First Set of Interrogs. at 3-4 ¶¶ 12-14 (excerpts attached as Exh. 1) and Plf.'s Responses at 5 ¶ 11 (excerpts attached as Exh. 2). Each expert's report, which was required by Rule 26(a)(2)(B)(ii) to set forth all "facts or data considered by the witness in forming [his opinions]," listed numerous sources pertaining to GM and FCA, but none pertaining to any other OEM. And, when questioned at their respective depositions, neither expert articulated any reliable basis for any opinion extending beyond GM and FCA. Specifically:

- **Bryson Bort** testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Bort Depo. 158:3-15 (excerpts attached as Exh. 3).[2]

But Bort failed to set forth any reliable foundation for that knowledge, testifying that he had conducted a "penetration" test for one unidentified[3] OEM in 2016, had used publicly-available sources to reverse engineer a 2012 Ford Focus in 2014, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Id. 42:15 – 46:4, 50:23 – 52:23, 60:21 – 63:10, 96:21 – 98:15, 155:16 – 156:10.

Bort also conceded material gaps in his knowledge, testifying that there are "OEMs who currently sell vehicles in the United States whose architectures [he does] not have specific firsthand knowledge of,"[4] id. 157:2-6, and that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] The plaintiff has designated portions of Bort's deposition transcript as "confidential." Those portions, along with an unredacted copy of this motion, will be filed under seal.

[3] Adding a further layer of inscrutability to the basis for his opinions as to non-GM/FCA OEMs, Bort refused to identify the OEMs of which he had prior knowledge, citing nondisclosure agreements. Bort Depo. 43:10 – 44:20, 155:16 – 157:1. While an expert may draw generally on knowledge gained from their experiences, including "confidential" knowledge protected by an NDA, it is improper for an expert to base an opinion about unnamed entities' capabilities on such "confidential" knowledge, where there is no record evidence about those entities and—importantly—no ability to cross-examine or test the expert's basis for such an opinion.

[4] Bort also refused to identify the OEMs of which he lacked prior knowledge, on the ground that doing so would implicitly identify the OEMs of which he did have prior knowledge. Bort Depo. 157:2 – 158:2.

██████████████████████████████████████████████████████. Id. 160:10-19.

- **Daniel Garrie** initially testified that, in rendering his opinions about "modern automobiles," he was "really . . . thinking about" GM and FCA.[5] Garrie Depo. 164:12-23 ("[R]eally my focus was on FCA and GM.") (excerpts attached as Exh. 4). Such a limited scope was consistent with his testimony, in response to questions about specific vehicle architecture and cybersecurity controls, that he was "not comfortable proffering opinions to every vehicle or all vehicles," id. 58:2 – 59:7, and "can't speak for all [OEMs]." Id. 180:6 – 181:3; see also id. 71:9-20, 182:1 – 183:8.

  When asked whether he had a basis to extend his opinions to non-GM/FCA OEMs and their vehicles, Garrie spoke vaguely about his "work[] with multiple other OEMs . . . . That's the basis of my expert opinion is my experience." Id. 164:24 – 165:22. In the ensuing line of questioning about specific OEMs, Garrie repeatedly invoked, without elaboration, his "industry experience," id. 171:7-8, "experience working in the industry," id. 171:14-15, and "general understanding and experience in the industry." Id. 174:5-7. But he refused to identify the OEMs with which he had experience, citing nondisclosure agreements. Id. 58:21 – 59:7, 71:21 – 72:19.

  When pressed, Garrie conceded that he did not have firsthand knowledge of the architecture of vehicles manufactured by non-GM/FCA OEMs. Id. 173:15 – 175:3 ("A. I do not have that firsthand knowledge."). He also conceded that the architecture and design of vehicles made by at least some non-GM/FCA OEMs is "beyond [his] experience" and that he "would be speculating" to testify about them. Id. 165:23 – 166:18.

As such, the basis for each expert's proffered opinion on non-GM/FCA OEMs boils down to an untestable ipse dixit. But "[t]he trial court's gatekeeping function requires more than simply taking the expert's word for it." Notes of Advisory Comm. on Rules, 2000 Am. to Rule 702 (quoting Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995)); accord SMS Sys. Maint. Svcs., Inc. v. Digital Equip. Corp., 188 F.3d 11, 25 (1st Cir. 1999) ("Expert testimony that offers only a bare conclusion is insufficient to prove the expert's point."); Donahoe v. Maggiano's Holding Corp., 440 F. Supp. 3d 92, 97 (D. Mass. 2020) (excluding

---

[5] Garrie also testified that he was thinking about "maybe one or two other OEMs," which he subsequently identified as Volkswagen, Toyota, and Ford. Garrie Depo. 164:12-23. Garrie subsequently refused to testify about any details of his knowledge of Ford, Toyota, or Volkswagen vehicles, or his basis therefor, on the ground of nondisclosure agreements. Id. 183:21 – 185:13.

expert opinion where there is "nothing in the record to ballast [the proffered] conclusion"). Rule 702 thus compels preclusion of this aspect of both experts' proposed testimony.

Moreover, Bort's and Garrie's "exegesis by assertion" on these points, Donahoe 440 F. Supp. 3d at 97, would not just be legally improper: It also would inject unreliable evidence into this trial. The evidence in the record reveals that even different model vehicles manufactured by a single OEM, such as GM or FCA, may have different architectures and cybersecurity capabilities. See, e.g., AG's Proposed Findings of Fact ¶¶ 97, 128-29, 166. In addition to the deposition testimony cited above establishing that each expert lacks a reliable foundation to render an opinion as to non-GM/FCA OEMs, each expert's proposed trial testimony concedes (when it is advantageous for them to do so) that OEMs have different capabilities, including:

- Bort's proposed testimony that disabling a vehicle's telematics system is not feasible because not all OEMs may have the capability to do so; ECF #159-6 ¶ 95;

- Bort's proposed testimony that the new Massachusetts law's "standardization" requirement increases risk because "OEMs do not use a standardized set of messaging protocols, diagnostics, or firmware in their vehicles," id. ¶ 64;

- Garrie's proposed testimony conceding that "each OEM requires unique software for access [to its vehicles' on-board diagnostic systems]," ECF #159-43 ¶ 66;

- Garrie's proposed testimony criticizing the new Massachusetts law's "standardization" requirement on the ground that "OEMs employ various authorization mechanisms before providing access to certain sensitive diagnostic actions through their on-board diagnostic system [sic]," id. ¶ 84; and

- Garrie's proposed testimony that disabling a vehicle's telematics system may not be feasible because "it is unclear whether OEMs can simply disable telematics systems across all vehicle makes and models. Vehicle electrical architecture often varies between fleets of makes and models for an OEM," id. ¶ 99.

Indeed, a very recent news article indicates that Toyota—which abruptly withdrew from active participation in this case after the Court determined that it would be subject to discovery, see

ECF #139 at 19-20—is introducing a new internet-based portal for certain data collected from customers' vehicles.[6]

To be sure, whether Toyota's portal satisfies the 2020 Right to Repair Law in a way that also comports with federal law cannot be assessed on this record. But that is exactly the point: Different OEMs have different capabilities and adopt different practices and architectures. Without an appropriate record—at a minimum, one that can be tested through cross-examination—it is not reliable to assume that all OEMs' capabilities, practices, and architectures are or are not uniform. Where the crux of this Court's "gatekeeping" role is to ensure that "any and all scientific testimony or evidence admitted [at trial] is not only relevant, but reliable," Daubert v. Merrell Dow Pharm., 509 U.S. 579, 589 (1993), Bort's and Garrie's testimony each must be precluded to the extent it offers descriptions or opinions about non-GM/FCA OEMs, on the ground that such testimony is based on insufficient facts and lacks a reliable "fit" with the evidence in this case.

### B. Each Expert's Proposed Testimony Should Be Precluded to the Extent It Offers an Opinion About the Meaning or Application of the Law.

Although a proffered expert opinion may embrace an ultimate issue, Fed. R. Evid. 704(a), "[a] district court has broad discretion to exclude expert opinion evidence about the law . . . ." Pelletier v. Main St. Textiles, LP, 470 F.3d 48, 54 (1st Cir. 2006). This is so even at a bench trial. No. Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 468 (1st Cir. 1988) (affirming trial court's decision "not to permit the [expert] witness to pontificate on his interpretation of the regulations" at bench trial).

---

[6] See https://www.aftermarketmatters.com/national-news/toyota-introduces-privacy-portal-to-make-consumer-data-more-accessible-and-transparent/ (Jun. 1, 2021).

Here, opinions about the law, its requirements, and its purported consequences are intrinsic to each expert's proposed testimony.[7] To highlight just a few examples:

- Bort proposes to testify that "the Data Law requires OEMs to remove safety and emissions protections built into their vehicles," ECF #159-6 ¶ 50;

- Garrie proposes to testify that, "[t]o comply with the requirements of the Massachusetts law at issue in this case . . . by the deadlines set forth therein, vehicle original equipment manufacturers ("OEM") would have to disable and/or negate [specified components and features] that are built into model year 2022 automobiles, and continue to do so for several more subsequent automobile model years," ECF #159-43 ¶ 9;

- Garrie proposes to testify that FMVSS 135 (49 C.F.R. § 571.135) requires "(1) the braking function to operate as specified, and (2) the braking function have sufficient cybersecurity controls in place to ensure the safe operation of the braking system," id. ¶ 23; and

- Garrie proposes to testify that, "[b]y requiring manufacturers to remove themselves from the chains of authorization and authentication, both Section 2 and 3 of the Data Law would require manufacturers to disable, and thus make inoperative, critical cybersecurity controls and design elements that manufacturers install with FMVSSs [sic], such as FMVSS 135, to protect steering and braking," id. ¶ 70.

Such testimony should be precluded for two independent reasons.

First, expert "testimony proffered solely to establish the meaning of a law is presumptively improper." United States v. Mikutowicz, 365 F.3d 65, 73 (1st Cir. 2004). On the other hand, expert opinion may be admissible if it "introduce[s]" the regulatory regime in a way that "hew[s] closely to the letter of the regulations themselves," but does not "appl[y] the regulations to the facts of the case or suggest[] that any actions . . . had violated the law." United States v. Galatis, 849 F.3d 455, 462 (1st Cir. 2017). Here, each expert's proposed testimony falls

---

[7] The portions of Bort's proposed testimony that purport to interpret or apply some provision of law include paragraphs 17, 55, 61, 62 (first sentence), 71 (third and fourth sentences), 74 (fifth sentence), 77 (all except first sentence), 87, and 105.
    The portions of Garrie's proposed testimony that do so include paragraphs 9, 21 (last sentence), 22-23, 41-42, 64, 67 (all but first sentence), 68-72, 78 (last sentence), 82, 85-88, 89 (last sentence), 90-92, 95, 122 (all but last sentence).

on the wrong side of the line.  Rather than introducing the 2020 Right to Repair Law and MVSA, Garrie and Bort each purport to interpret it.[8]  Their interpretations stray far from the statutory text, as discussed in the next paragraph.  And, most importantly, both Garrie and Bort purport to apply the law to facts, offering opinions about: (1) whether specific actions would violate (or be compelled by) the 2020 Right to Repair Law; (2) what is required by "the FVMSS regulatory framework" as applied to cybersecurity controls, ECF #159-43 ¶ 23; and (3) how the purported requirements of the 2020 Right to Repair Law conflict with the purported requirements of the FMVSS, ECF #159-43 ¶ 70.

Second, each expert's interpretation of the law is so idiosyncratic as to render his ensuing opinions unreliable.  For example:

- Bort's proposed trial testimony is premised on his understanding that "mechanical data" under the 2020 Right to Repair Law[9] includes, among other things, the software encoded to each ECU.  ECF #159-6 ¶ 77.  But this view of the law is idiosyncratically expansive, and is incompatible with this Court's obligation to "strive to provide an alternative meaning that avoids the irrational consequence."  No. & So. Rivers Watershed Ass'n, Inc. v. Town of Scituate, 949 F.2d 552, 558 (1st Cir. 1991).

- Bort's proposed trial testimony is also premised on his understanding that "mechanical data" includes "telematics data, which . . . are not necessary for vehicle diagnosis, repair, or maintenance."  ECF #159-6 ¶ 77.  But this view contravenes the statutory text, which limits "mechanical data" to that which is "used for or otherwise related to the diagnosis, repair or maintenance of the vehicle."

---

[8] Importantly, however, neither Garrie nor Bort suggests that any term in the 2020 Right to Repair Law is a "technical term of art," the meaning of which should be defined "by reference to a particular industry usage" of which Garrie or Bort supplies evidence.  See United States v. Lachman, 387 F.3d 42, 53 (1st Cir. 2004).  In this way (among others), the plaintiff's experts' proposed testimony about the 2020 Right to Repair Law is not comparable to that proffered by the Attorney General's expert Craig Smith.  See ECF #161-3 ¶¶ 112-19.

[9] The 2020 law defines "mechanical data" as "any vehicle-specific data, including telematics system data, generated, stored in or transmitted by a motor vehicle used for or otherwise related to the diagnosis, repair or maintenance of the vehicle." Def.'s Concls. of Law ¶ 36.

- Bort testified at his deposition ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Bort Depo. 179:22 – 181:9. But his view ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮— especially when combined with the law's explicit requirement that the platform allow users to "send commands to in-vehicle components if needed for purposes of maintenance, diagnostics and repair"—is absurd and irrational. As such, it also is incompatible with the canon against achieving an irrational result.

- Bort also testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Bort Depo. 198:20 – 199:16. But this view contravenes the statutory text, which requires "direct[] access[]" only to the contemplated diagnostic "platform" and to the "mechanical data" communicated by that platform.

- Garrie proposes to testify that the 2020 Right to Repair Law "requir[es] manufacturers to remove themselves from the chains of <u>authorization and authentication</u> . . . ." ECF #159-43 ¶ 70 (emphasis added). But, once again, this view is faithless to the statutory text, which requires only that OEMs "not require any <u>authorization</u> by the manufacturer, directly or indirectly" to access a vehicle's on-board diagnostic system.

    The analytical gap between the law, and Garrie's interpretation of it, is important because, as Garrie acknowledged in his deposition, "authorization" and "authentication" are distinct concepts with different meanings. Garrie Depo. 230:14 – 231:10. Garrie's interpretation thus assumes that the law prohibits a whole category of authentication security techniques that, on any fair reading, the law does not actually prohibit.[10]

- Relatedly, Garrie proposes to testify that application of the 2020 Right to Repair Law would enable a "bad actor" to send inaccurate diagnostic messages to a vehicle. ECF #159-43 ¶ 87-88. But this testimony contravenes the law's explicit requirement that the diagnostic platform "securely communicat[e]" mechanical data, a requirement that the Attorney General has interpreted to permit authentication of the identities of the recipient and the sender. Def.'s Findings of Fact ¶ 68; see also <u>McGuire v. Reilly</u>, 386 F.3d 45, 55, 64 (1st Cir. 2004) (AG's interpretation of state law is entitled to "great weight").

It also is significant that each of these proposed legal-interpretative opinions errs on the side of finding cybersecurity-related problems in the 2020 Right to Repair Law, thus contravening this

---

[10] Bort's proposed testimony exhibits the same fallacy. See ECF #159-6 ¶ 58. ▮▮▮▮▮▮▮ ▮▮▮▮ Bort Depo. 239:20 – 241:14.

9

Court's obligation to avoid "assum[ing] [the law] will be construed in a way that creates a conflict with federal law." Arizona v. United States, 567 U.S. 387, 415 (2012).

Thus, independent of the rule that forbids expert opinion about the meaning or application of law, each expert's proposed testimony is premised on interpretations of the 2020 Right to Repair Law that are so fanciful, faithless, and/or impermissible as to render their ensuing opinions unreliable. Their opinions should be excluded for that additional reason.

## CONCLUSION

For these reasons, the Attorney General respectfully requests that the Court preclude both Garrie and Bort from: (1) offering any descriptions or opinions about OEMs and their vehicles other than GM and FCA; and (2) offering any opinion about the meaning or application of any law. The portions of each expert's testimony that would be affected by this relief are set forth in footnotes 1 and 6 above.

Respectfully submitted,

ATTORNEY GENERAL
MAURA HEALEY

By her attorneys,

June 4, 2021

/s/ Eric A. Haskell
Robert E. Toone, BBO No. 663249
Eric A. Haskell, BBO No. 665533
Phoebe Fischer-Groban, BBO No. 687068
Julia Kobick, BBO No. 680194
  Assistant Attorneys General
Christine Fimognari, BBO No. 703410
  Special Assistant Attorney General
Office of the Attorney General
One Ashburton Place
Boston, Mass.  02108
(617) 963-2589
eric.haskell@mass.gov

## CERTIFICATE OF SERVICE

    I hereby certify that this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on June 4, 2021.

                                                   */s/ Eric A. Haskell*
                                                     Eric Haskell