UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLIANCE FOR AUTOMOTIVE INNOVATION, <br><br> Plaintiff, <br><br> v. <br><br> MAURA HEALEY, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS, in her official capacity, <br><br> Defendant | CIVIL ACTION <br> NO. 1:20-cv-12090-DPW |

## ATTORNEY GENERAL'S MOTION TO REOPEN THE EVIDENCE

The Court held a nonjury trial in this case earlier this year, taking evidence on June 14-16 and hearing the parties' arguments on June 25 and July 21. At trial, a principal dispute was whether it is impossible for automobile manufacturers ("OEMs") to comply with both federal law and Section 3 of the Massachusetts Data Access Law, which requires a manufacturer of vehicles sold in Massachusetts that "utilize[] a telematics system" to equip those vehicles with an inter-operable, standardized, and open access platform across that OEM's makes and models, beginning with Model Year 2022. G.L. c. 93K, § 2(f).

The Attorney General presented expert opinion evidence that identified several methods by which an OEM might comply with both state and federal law. One such method was to simply disable any telematics system in MY22 and later vehicles. The plaintiff Alliance for Automotive Innovation, however—purporting to speak for all of its OEM members—disputed that OEMs were capable of doing so, ECF #235 at FF ¶ 201, and argued that it is a "practical impossibility" to do so only for vehicles sold in Massachusetts. ECF #215 at 15 n.18 (Alliance's pre-argument brief); *see also* ECF #236 at FF ¶ 129.

1

In recent weeks, new facts have come to the Attorney General's attention that bear on this dispute. Specifically, the Attorney General has learned that one of the Alliance's OEM members, Subaru, has made its MY22 vehicles ineligible for its "StarLink" telematics system if the vehicle is associated with an address in Massachusetts. What's more, Subaru has done so explicitly as a way "to comply with the new Data Law" that "will enable [Subaru of America] and, in turn, [Subaru of New England] to distribute model year 2022 vehicles for sale or lease in Massachusetts." These facts were unavailable at the time of discovery and trial, in part because Subaru had not begun to sell MY22 vehicles in Massachusetts at that time.

The Attorney General now respectfully moves to reopen the trial evidence in order to supplement it with these new facts. Specifically, she proposes to mark four documents obtained from Massachusetts Subaru dealers—attached to the Affidavit of Ciara Tran (ECF #247) as exhibits 1, 2, 3, and 4, respectively—as Trial Exhibits 100, 101, 102, and 103 for this Court's consideration. The Attorney General believes that no further discovery on the facts contained within these documents is necessary. Nevertheless, should this Court and the Alliance believe that the documents standing alone are insufficient, the Attorney General is agreeable to taking further discovery from Subaru, limited to these topics, including deposition testimony at which both parties can conduct cross-examination. Mindful that this motion may affect the timing of this Court's decision, the Attorney General is also willing to extend her stipulation concerning her enforcement of the Data Access Law.

## Background

Fact discovery in this case took place between February 5 and May 7, 2021. *See* ECF #78, 138. Trial evidence was taken between June 14 and 16, and the trial ended with arguments of counsel on July 21. *See* ECF #219, 220, 221, 222, 239.

*The Attorney General's Office Gets Secondhand Information that Subaru Might Be Disabling Its Telematics System for Sales of Model Year 22 Vehicles to Massachusetts Customers*

On Friday, August 20, 2021, the AGO's information services center received an unsolicited call from a private citizen inquiring about this lawsuit.  Aff. of Molly Johnson ¶ 2.  In a series of follow-up conversations the following week, the caller explained that, on August 16, he had purchased a 2022 Subaru Outback from North Reading Subaru, which came with the StarLink system disabled.  *Id.* ¶ 3.  He stated that he had been advised by the dealer that Subaru could not legally turn on StarLink due to the "RTR law."  *Id.*  He also stated that the vehicle's window sticker indicated that StarLink cannot be hooked up, and he provided the AGO with two photographs of a portion of the window sticker.  *Id.* ¶¶ 3-4 & Exhs. 1 & 2.

*The AGO Inquires Into the Availability of StarLink on MY22 Subaru Vehicles Sold in Massachusetts*

Based on this initial information, the AGO assigned one of its civil investigators, Ciara Tran, to conduct a more comprehensive inquiry into the availability of StarLink on MY22 Subaru vehicles sold in Massachusetts.  Aff. of Ciara Tran ¶ 2.  Between September 19 and October 21, Ms. Tran called twenty of the twenty-two Subaru dealers in Massachusetts.  *Id.* ¶ 3.

The dealers who spoke with Ms. Tran explained that "StarLink Safety & Security" is a suite of wireless vehicle services that includes features such as collision notification, remote ignition start, remote door lock/unlock, stolen vehicle location, enhanced roadside assistance, maintenance notification, vehicle health reports, and diagnostic reports.  *Id.* ¶ 5.  Several specifically compared StarLink to General Motors' OnStar system, calling the two "very similar."  *Id.* ¶ 6.

The dealers reported that, generally, they had begun to receive some types of MY22 vehicles (especially the Outback, Legacy, and Impreza) in July and August 2021.  *Id.* ¶ 7.  They also reported that other types of MY22 vehicles (especially the Forrester and Crosstrek) had not

3

yet been received and were not expected for some time. *Id.* Many dealers mentioned that they were receiving fewer MY22 vehicles than expected, or were receiving them later than expected, due to supply disruptions. *Id.*

***Subaru Dealers Confirm that Subaru Has Made its MY22 Vehicles Ineligible for Its "StarLink" Telematics System if the Vehicle Is Associated with a Massachusetts Address***

The dealers uniformly acknowledged that StarLink could not be enabled for MY22 Subaru vehicles sold to customers in Massachusetts. *Id.* ¶ 8. They also stated that, to their knowledge, StarLink remained available for MY22 Subaru vehicles sold to customers in states other than Massachusetts. *Id.* Several dealers, when asked who had decided upon that policy, attributed the decision to the corporate level. *Id.* At Ms. Tran's request, two dealers—Copeland Subaru and Stateline Subaru—provided her with a total of four documents that furnish evidence of the details of Subaru's policy and its implementation.

*1*. Stateline Subaru provided a June 2, 2021, memorandum from the executive vice president of Subaru of New England ("SNE") regarding "STARLINK Safety & Security for Massachusetts Customers." *Id.* ¶ 10 & Exh. 1. The memorandum states that, "to comply with the new Data Law, SOA [i.e., Subaru of America] has determined that it is no longer able to offer STARLINK Safety & Security subscriptions to Massachusetts residents beginning with model year 2022." *Id.* Exh. 1. It further states that this policy "will enable SOA and, in turn, SNE to distribute model year 2022 vehicles for sale or lease in Massachusetts." *Id.* The memorandum includes a schedule of each MY22 model's estimated start of production, *id.*, which is generally consistent with the dealers' statements about when they received MY22 vehicles. The memorandum also refers to an attached "Telematics Data Law FAQ," *id.*, no copy of which was received from Stateline Subaru.

2. Copeland Subaru provided a document titled "Telematics Data Law – FAQs." *Id.* ¶ 11 & Exh. 2. That document states that, "[a]s a direct result of the new Data Law, Subaru of America is no longer able to offer STARLINK Safety & Security services to MA residents starting with MY22 vehicles." *Id.* Exh. 2. It also includes the following screenshot of a message that, the document states, will appear on SubaruNet under "Telematics Subscription" for all affected vehicles:



*Id.* The document explains that, if a customer moves out of Massachusetts such that no Massachusetts address is associated with that vehicle in Subaru's system, the vehicle will be eligible to re-enroll in StarLink services. *Id.*

3 & 4. Copeland and Stateline each provided an example window sticker associated with a 2022 Outback offered for sale. *Id.* ¶¶ 12-13 & Exhs. 3-4. The stickers both state that StarLink Safety Plus is "not available to Massachusetts residents or businesses." *Id.* Exhs. 3-4.

***The Dealers Insist that Subaru Vehicles Sold With a Disabled Telematics System Are Safe***

The dealers who spoke with Ms. Tran were emphatic that Subaru vehicles without an operating StarLink system are safe, using language such as "absolutely," "100%," and "one of the safest on the road." *Id.* ¶ 14. Several dealers also emphasized that StarLink's absence "doesn't change any of the safety features of the car at all" and "doesn't disable any safety features or affect the drivability of the car," and that the vehicle's safety and operation "will be the same if you had [StarLink] or not." *Id.*

5

**Argument**

A district court may, in exercise of the "broad discretion in ordering proof" afforded to it by the Federal Rules of Evidence, decide to reopen the evidence after a nonjury trial has concluded but before judgment has entered.[1] *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1148, 1160 (1st Cir. 1996) (citing Fed. R. Evid. 611); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331-32 (1971) (motion to reopen to submit additional proof is left to the discretion of the trial judge); *Rivera-Flores v. P.R. Tel. Co.*, 64 F.3d 742, 746 (1st Cir. 1995) (rulings on such motions reviewed for abuse of discretion). That decision "turns on flexible and case-specific criteria," *Anderson v. Brennan*, 911 F.3d 1, 13 (1st Cir. 2018), such as: (1) whether the evidence sought to be introduced is important and probative; (2) whether the moving party provides a *bona fide* explanation for not seeking to introduce the evidence earlier; and (3) whether reopening the evidence will cause undue prejudice to the nonmoving party. *Rivera-Flores*, 64 F.3d at 746.

Here, this Court should reopen the trial record to admit evidence concerning Subaru's suspension of StarLink in its MY22 vehicles in Massachusetts. First, this evidence is highly important and probative, because it demonstrates that a major OEM not only *can* immediately comply, but *has complied*, with both Section 3 and federal law—contrary to one of the Alliance's core contentions. *See* pp. 7-9 below. Second, there is a *bona fide* reason why this evidence is emerging only now: sales of MY22 Subaru vehicles commenced only after fact

---

[1] "The restrictions on granting a new trial" under Civil Rules 52(b) and 59, which govern motions filed *after* entry of final judgment, "do not apply . . . to a motion to take additional testimony made before a decision has been given in [a nonjury civil] case." 11 Wright & Miller, Federal Practice and Procedure § 2804, at 68 (2012).

discovery and the evidence phase of the trial were over. *See* pp. 9-10 below. Third, reopening the evidence will not prejudice the Alliance. *See* p. 10 below.

**I. The Subaru Evidence Is Highly Important and Probative Because It Refutes a Key Contention by the Alliance.**

To sustain its claim of conflict preemption, the Alliance must prove that it is impossible for OEMs to comply with the Federal Motor Vehicle Safety Act ("MVSA") or Clean Air Act ("CAA"), on the one hand, and the Data Access Law on the other. *Capron v. Office of Att'y Gen'l*, 944 F.3d 9, 13, 21 (1st Cir. 2019) (citation omitted), *cert. denied*, 141 S. Ct. 150 (2020). At trial, the Attorney General introduced expert opinion evidence that an OEM could immediately comply with both Section 3 of the Data Access Law and the MVSA and CAA by disabling any telematics system in an MY22 or newer vehicle. ECF #235 at FF ¶¶ 198-207. Although the Attorney General's evidence also identified two other methods to comply with both Section 3 and federal law,[2] the "disable telematics" method is the only method that, as of June 2021, was capable of being implemented immediately. The Alliance, however, disputed that OEMs are capable of disabling the telematics, ECF #236 at FF ¶ 201, and argued that it is a "practical impossibility" to do so only for vehicles sold in Massachusetts.[3] ECF #215 at 15 n.18 (Alliance's pre-argument brief); *see also* ECF #236 at FF ¶ 129 (Alliance's proposed finding that an OEM's disabling of its telematics systems cannot "be cabined just to Massachusetts," but "would effectively require a nationwide change").

Here, the Subaru evidence refutes the Alliance's contention that OEMs cannot disable

---

[2] Specifically: (1) an OEM could comply with Section 3 in the coming months by using a wireless-equipped "dongle" plugged into the vehicle's J-1962 connector, ECF #235 at FF ¶¶ 209-21; and (2) an OEM could comply with Section 3 in the longer term by building an inter-operable, standardized, and open access platform, *id*. at FF ¶¶ 222-32.

[3] The trial evidence showed that neither of the two "representative" OEMs, GM and FCA, had made any attempt to comply with the Data Access Law, either after it was certified for the ballot or after it was approved by the voters. ECF #235 ¶¶ 151, 170.

telematics systems (and cannot do so only for vehicles sold in Massachusetts) and thus cannot immediately comply with both Section 3 and federal law. Indeed, the Subaru evidence shows that Subaru—a major OEM and a member of the Alliance—has done just that, for the express purpose of complying with both Section 3 and federal law. Tran Aff. Exhs. 1 & 2. The Subaru evidence also shows that Subaru has cabined its suspension of the StarLink telematics system to those vehicles associated with an address in Massachusetts. Tran Aff. Exh. 2. And the self-certification procedure of the MVSA, *see* 49 U.S.C. § 30115(a), confirms that Subaru vehicles sold with telematics disabled are compliant with federal motor vehicle safety standards. *See also* ECF #42 ¶ 8 (affidavit by Subaru representative emphasizing that "Subaru's reputation rests in part on its long track record of offering consumers some of the safest . . . vehicles on the market"). Thus, the Subaru evidence confirms the Attorney General's position that an OEM can achieve immediate compliance with Section 3, consistently with federal law, by disabling the telematics in MY22 vehicles. It also confirms the Attorney General's position that telematics are not so integral to vehicles' functioning or safety that disabling them would force the OEM to leave the Massachusetts market altogether.

The Subaru evidence is not cumulative of other evidence introduced at trial. *See Blinzler*, 81 F.3d at 1160 (in assessing whether the evidence is probative or important, the court may also consider whether the evidence "sought to [be] introduce[d] [i]s non-cumulative"). Because trial occurred in June and July of 2021, before most OEMs began selling MY22 vehicles in Massachusetts, the evidence concerning the feasibility of immediate compliance with Section 3 was necessarily prospective and in the nature of expert opinion. But now, three months later, OEMs such as Subaru have begun to sell their MY22 vehicles, yielding evidence of the *actual* practicability of immediate compliance with Section 3 and federal law.

The Subaru evidence also bears on another legal dispute between the parties. Specifically, the Attorney General argued at trial that the Alliance failed to establish associational standing because the Alliance's "member circumstances differ[ed]" with respect to OEMs' ability to comply with the Data Access Law, *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 314 (1st Cir. 2005), and because the evidence demonstrated that this case involved "application of law to a series of different factual scenarios." *Nat'l Ass'n of Gov't Employees v. Mulligan*, 914 F. Supp. 2d 10, 14 (D. Mass. 2012). See ECF #232 at CL ¶¶ 7,9. The Alliance disputed those contentions, *see* ECF #235 at CL ¶¶ 7,9, and contended instead that "Auto Innovators' members are aligned in their inability to comply with both the Data Access Law and federal law." ECF #233 at CL ¶ 6. The Subaru evidence shows that the Attorney General was right on this point as well: Some OEMs, like Subaru, can and do comply with both Section 3 and federal law by selling MY22 vehicles in Massachusetts with telematics disabled.

## II.  The Attorney General Could Not Have Introduced the Subaru Evidence at Trial.

The second criterion for reopening the evidence—whether "the moving party's explanation for failing to introduce the evidence earlier is *bona fide*"—is also readily met, because the evidence bearing on Subaru's sales of MY22 vehicles in Massachusetts was not available at the time of trial. *Rivera-Flores*, 64 F.3d at 746. Subaru dealers began to receive and sell some (not all) MY22 vehicle models in July and August 2021, after the trial evidence had been presented and long after discovery had closed. Tran Aff. ¶ 7. The Attorney General first received secondhand information that Subaru might be selling MY22 vehicles with Starlink disabled in late August, Johnson Aff. ¶¶ 2-3, and, rather than precipitously seek to reopen the trial evidence, first conducted an inquiry to confirm that there is indeed important and probative evidence to be had. Tran Aff. ¶¶ 2-3. Thus, the Attorney General could not have introduced the Subaru evidence before the evidence had closed in this case. *See Blinzler*, 81 F.3d at 1160

(affirming order allowing motion to reopen where "[t]here is no sign that the [moving party] withheld the proof as a strategic matter").

### III.     Reopening the Evidence Will Not Prejudice the Alliance.

In view of the ready availability of documentary evidence concerning Subaru's suspension of StarLink in its MY22 vehicles in Massachusetts, there is no reason to expect that reopening the evidence will occasion any more than a minimal delay in entry of judgment. *See Rivera-Flores*, 64 F.3d at 749 (non-moving party not prejudiced where "introduction of . . . readily obtainable documentary evidence could have entailed but minimal delay"). The Attorney General believes that no further discovery on the facts contained within these documents is necessary. Nevertheless, should this Court and the Alliance believe that the documents standing alone are insufficient, the Attorney General is agreeable to taking further discovery from Subaru, limited to these topics, including deposition testimony at which both parties can conduct cross-examination. *Rowen Petroleum Properties, LLC v. Hollywood Tanning Sys., Inc.*, No. CV 08-4764, 2013 WL 12303311, at *2 (D.N.J. Sept. 30, 2013) (no undue prejudice to non-moving parties where "additional discovery or testimony taken will be limited in scope"). And, as noted, the Attorney General is willing to extend her stipulation concerning her enforcement of the Data Access Law. Reopening the evidence will not prejudice the Alliance.

### Conclusion

For the foregoing reasons, this Court should reopen the trial evidence.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | ATTORNEY GENERAL<br>MAURA HEALEY |
|  | By her attorneys, |
|  | */s/ Eric A. Haskell* |
| October 22, 2021 | Robert E. Toone, BBO No. 663249<br>Eric A. Haskell, BBO No. 665533<br>Phoebe Fischer-Groban, BBO No. 687068<br>Julia E. Kobick, BBO No. 680194<br>  Assistant Attorneys General<br>Christine Fimognari, BBO No. 703410<br>  Special Assistant Attorney General<br>Office of the Attorney General<br>One Ashburton Place<br>Boston, Massachusetts 02108<br>(617) 963-2855<br>eric.haskell@mass.gov |

## Certificates

I certify that a true copy of this document will be sent electronically by the ECF system to attorneys of record identified on the Notice of Electronic Filing.

I further certify, pursuant to Fed. R. Civ. P. 37(a)(1) and LR 7.1(a)(2), that I have conferred with plaintiff's counsel and attempted in good faith to resolve or narrow the issues presented by this motion and that plaintiff has stated that it plans to oppose this motion.

*/s/ Eric A. Haskell*

October 22, 2021                                Eric A. Haskell