UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLIANCE FOR AUTOMOTIVE INNOVATION,<br><br>Plaintiff,<br><br>v.<br><br>MAURA HEALEY, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS, in her official capacity,<br><br>Defendant | CIVIL ACTION<br>NO. 1:20-cv-12090-DPW |

**ATTORNEY GENERAL'S NOTICE OF SUPPLEMENTAL AUTHORITY**

In accordance with this Court's Order of November 2, 2021, ECF No. 257, and as discussed at the hearing on October 28, 2021, the Attorney General hereby provides the following supplemental authority relevant to this case.

**I.      In the *Volkswagen* Litigation, the United States Has Rejected the Manufacturers' Argument that a Potential for Conflict Arising from Overlapping Federal and State Regulatory Authority Warrants a Finding of Implied Preemption.**

In *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 959 F.3d 1201, 1205-06 (9th Cir. 2020), the Ninth Circuit held that while the Clean Air Act expressly preempts state and local government efforts to apply anti-tampering laws to *pre-sale* vehicles, it does not impliedly preempt state authority to enforce anti-tampering laws against *post-sale* vehicles.  Volkswagen now seeks review of the denial of its implied preemption claim in the Supreme Court.  *Volkswagen Group of Am., Inc. v. Envtl. Prot. Comm'n of Hillsborough Cnty., Fla.*, No. 20-994 (petition filed Jan. 21, 2021).  Its petition is now listed for conference on November 12, 2021.

1

As the parties discussed at the hearing on October 28, 2021, the preemption claims in *Volkswagen* are substantively distinct from those asserted here. For example, the Alliance for Automotive Innovation concedes in this case that the Clean Air Act's express preemption provision, 42 U.S.C. § 7543(a), does not apply to the Data Access Law. ECF No. 235 at CL ¶ 60. More generally, the Data Access Law is not an anti-tampering law, but rather a law that regulates how access to vehicle onboard diagnostic and repair data shall be provided to vehicle owners and independent repair shops.

A key similarity is that, in each case, the United States has declined to assert implied preemption in the absence of evidence of an actual conflict between federal and state law. In *Volkswagen*, the Alliance filed an amicus brief in support of the petition, expressing the "automobile industry's grave concern about the risks and burdens of multiple, potentially conflicting regulatory schemes." Brief of Amici Curiae Alliance for Automotive Innovation and National Automobile Dealers Ass'n, No. 20-994, at 20 (filed Feb. 22, 2021). The United States rejected that concern in its brief opposing certiorari, explaining that the manufacturers' inability to identify concrete examples of conflicts "weighs strongly against a finding of implied preemption." Brief for the United States as Amicus Curiae, No. 22-994, at 19 (filed Sept. 27, 2021). The United States described the Clean Air Act as "a paradigmatic example of cooperative federalism, under which 'the States and the Federal Government [are] partners in the struggle against air pollution.'" *Id.* at 2 (citation omitted). The United States then explained that it is insufficient for manufacturers to assert that "state and local anti-tampering claims are likely to obstruct EPA's regulation of manufacturers' post-sale conduct," when "[n]o such obstruction has occurred in the past or exists in the circumstances of this case," and "any future conflicts can appropriately be addressed on a case-by-case basis if and when they arise." *Id.* at 19. Moreover,

"the possibility that federal enforcement priorities might be upset" as a result of overlapping regulatory authority "is not enough to provide a basis for preemption." *Id.* at 21 (quoting *Kansas v. Garcia*, 140 S. Ct. 791, 807 (2020)).[1]

So too has the United States declined to claim preemption in this case. Statement of Interest of the United States, ECF No. 202 at 1, 10 (June 11, 2021). The United States declined to participate in this litigation or submit evidence at trial because, in its view, any finding of preemption would be premature. To its knowledge, "no motor vehicle manufacturers have actually made any complying modifications to their vehicles," and "the rapidly changing nature of cybersecurity" prevents the National Highway Traffic Safety Administration (NHTSA) from "making a fact-intensive determination as to whether any potential changes made by motor vehicle manufacturers to comply with the Data Law would result in a defect related to motor vehicle safety." *Id.* at 1 n.2. The United States further explained that, rather than asserting facial preemption now, NHTSA will use its enforcement authority to resolve any actual conflicts that arise on a case-by-case basis: "[I]f in practice the Data Law's requirement of remote access to vehicle telematics' systems creates a safety issue constituting a defect under the Safety Act, then that Act would require motor vehicle manufacturers to recall and stop selling new vehicles compliant with that requirement." *Id.* at 1, 5. That position reflects NHTSA's well established authority to address emergent vehicle safety risks through recalls – an authority that exists "in addition to other rights and remedies under other laws of the United States or a State." 49 U.S.C. § 30103(d).

---

[1] The United States further explained that implied preemption was improper in *Volkswagen* because the state and local claims were not contrary to any EPA order, Brief for the United States at 20-21, and because the case did involve an "effort[] to punish conduct that EPA has deemed necessary or appropriate under the CAA," *id.* at 24. The same is true in this case.

**II.     The First Circuit Continues to Apply the "No Set of Circumstances" Test to Facial Preemption Challenges Like This One.**

The Alliance disputes that, as plaintiff, it has "the most difficult challenge" of establishing that "no set of circumstances exists under which" the Data Access Law "would be valid. *Pharm. Research & Mfrs. of Am. v. Concannon*, 249 F.3d 66, 77 (1st Cir. 2001), *aff'd*, 538 U.S. 644 (2003).  *See* ECF No. 235 at CL ¶ 31.  On August 3, 2021, however, the First Circuit reaffirmed that this standard governs facial preemption claims like those the Alliance is asserting here.  *NCTA – The Internet & TV Ass'n v. Frey*, 7 F.4th 1, 17 (1st Cir. 2021).

In *NCTA*, a trade association for the cable television industry contended that federal law preempted certain provisions of a Maine law that regulate how cable system operators must treat local public, educational, and government access channels.  *Id.* at 3-4.  After consolidating the motion for preliminary injunction with trial on the merits, the District Court denied the association's claims for relief, concluding that none of the challenged state law provisions was facially preempted.  *Id.* at 7.  The First Circuit affirmed.  As plaintiff, the First Circuit explained, the association "bears the burden to establish on this facial preemption challenge that 'no set of circumstances exists under which the [statute] would be valid.'"  *Id.* at 17 (quoting *Concannon*, 249 F.3d at 77; *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  The association could not meet that burden by identifying hypothetical concerns or asserting a "broader construction" of the state law than "its text compels."  *Id.* at 19.

**III.    The Ninth Circuit and District of Arizona Have Rejected the Intellectual Property Preemption Claims Made Here.**

The Alliance has made four "intellectual property" preemption claims (Counts 3 through 6).  *See* Compl. ¶¶ 116-28 (Copyright Act); ¶¶ 129-38 (Defend Trade Secrets Act ("DTSA")); ¶¶ 139-47 (Computer Fraud and Abuse Act ("CFAA")); ¶¶ 148-59 (Digital Millennium

Copyright Act ("DMCA")).  It appears that these four types of claims have been asserted in only one other case, *CDK Global LLC v. Brnovich*, 461 F. Supp. 3d 906 (D. Ariz. 2020).  Unlike this case, in which a trade association purports to assert the intellectual property rights of its members, the plaintiffs in *CDK Global* developed, owned, and operated proprietary computer systems that were licensed by automotive dealerships to help manage their business operations.  *Id.* at 912.  They challenged an Arizona law that prohibits them from imposing unreasonable restrictions on dealerships' extraction of data from those systems and requires them to make available a standardized framework for the exchange, integration, and sharing of that data.  *Id.* at 912-13.

On May 5, 2020, the District Court dismissed the plaintiffs' claims under the DTSA, the CFAA, and the DMCA, holding that none of those statutes preempt state laws that authorize access to data held in computer systems.  *See id.* at 918-19 (DTSA); *id.* at 915-16 (CFAA); *id.* at 918 (DMCA).  On July 24, 2020, the District Court denied the plaintiffs' claim under the Copyright Act, holding that a facial preemption claim is unlikely to prevail against a state law that "does not, on its face, conflict with the Copyright Act" and which is "susceptible to an interpretation that would allow all parties to comply with the law without violating Plaintiffs' Copyright Act rights."  *CDK Global LLC v. Brnovich*, No. CV-19-04849-PHX-GMS, 2020 WL 4260506, at *2-4 (D. Ariz. July 24, 2020).

The Ninth Circuit recently affirmed.  *CDK Glob. LLC v. Brnovich*, ___ F.4th ___, No. 20-16469, 2021 WL 4944824 (9th Cir. Oct. 25, 2021).  The plaintiffs did not appeal the dismissal of their DTSA or DMCA claims.  They did appeal the dismissal of their CFAA claim, but the Ninth Circuit concluded that it lacked pendent appellate jurisdiction to review it.  *Id.* at *3.  On the Copyright Act claim, the court, applying the same "no set of circumstances" test

applied by the First Circuit in *NCTA*, held that the plaintiffs could not show that "no set of circumstances exists under which [the state law] would be valid" or that "every possible application of [the state law] would conflict with the Copyright Act." *Id.* at *4 (quoting *Salerno*, 481 U.S. at 745). The Ninth Circuit deemed the "current design of the system" to be irrelevant to plaintiffs' facial challenge; what mattered, the court emphasized, is whether there was any possible *future* implementation that would not violate the plaintiffs' copyright. *Id.* The court also found no "authority suggesting that causing a copyright holder to make a copy of its own copyrighted work and keep it within the copyright holder's exclusive possession would violate the Copyright Act." *Id.* at *5. *Compare* Compl. ¶¶ 124, 126; ECF No. 76 at 19-20. In addition, the plaintiffs failed to establish that any purported copyright violation would "persist for a period of more than transitory duration." 2021 WL 4944824, at *5. *Compare* ECF No. 86 at 16-17 & n.8. Accordingly, the Ninth Circuit concluded, the plaintiffs failed to carry their burden "to show that every possible application of the law would conflict with the Copyright Act." 2021 WL 4944824, at *6.

Respectfully submitted,
ATTORNEY GENERAL
MAURA HEALEY

By her attorneys,

/s/ Eric A. Haskell
Robert E. Toone, BBO No. 663249
Eric A. Haskell, BBO No. 665533
Phoebe Fischer-Groban, BBO No. 687068
Julia E. Kobick, BBO No. 680194
Christine Fimognari, BBO No. 703410
  Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2855
eric.haskell@mass.gov

November 8, 2021

## **CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on November 8, 2021.

/s/ Eric A. Haskell
Eric A. Haskell
Assistant Attorney General