IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLIANCE FOR AUTOMOTIVE INNOVATION<br><br>Plaintiff,<br><br>vs.<br><br>MAURA HEALEY, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS in her official capacity,<br><br>Defendant. | C.A. No. 1:20-cv-12090-DPW |

**PLAINTIFF'S STATEMENT REGARDING THE UNITED STATES' AMICUS BRIEF IN *VOLKSWAGEN***

In accordance with the Court's Order at the status conference on October 28, 2021, Plaintiff respectfully submits this statement regarding the Brief of the United States as *Amicus Curiae* in *Volkswagen Group of America, Inc. v. Environmental Protection Commission of Hillsborough County*, No. 20-994 (U.S.).

## BACKGROUND & SUMMARY

The facts at issue in *Volkswagen* are readily distinguishable from the issues before this Court. *Volkswagen*, as presented to the Supreme Court, concerns only post-sale updates to vehicle emissions software. Volkswagen challenges the imposition of state and local anti-tampering penalties for those post-sale updates as expressly and impliedly preempted by the Clean Air Act. *See* Petition for Writ of Certiorari, *Volkswagen*, No. 20-994 (U.S.). After the Supreme Court called for the views of the Solicitor General, the United States filed a brief expressing the United States' opinion that the Court should deny certiorari. *See* Brief of the United States as *Amicus Curiae*, *Volkswagen*, No. 20-994 (U.S.) ("Amicus Br.").

1

The *Volkswagen* case and the United States' amicus brief have nothing to do with the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 301 *et seq.* ("Vehicle Safety Act"). Further, the United States' discussion of preemption under the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, is tied to the unique facts in *Volkswagen*—post-sale software updates involving emission-defeat devices. To the extent the United States' discussion of preemption in the disparate *Volkswagen* matter has any applicability to this case, it is that the United States says in its amicus brief that the Clean Air Act would impliedly preempt state and local emissions regulations that have the practical effect of requiring manufacturers to make changes to the original design of their vehicles—as the Data Access Law would require here. *See* Amicus Br. 17 ("We agree with petitioners that Section 209(d) does not authorize States to impose post-sale emissions standards that would have the practical effect of compelling manufactures to modify the original design of their vehicles.").

## ARGUMENT

I.  **The United States' Amicus Brief in *Volkswagen* Is Inapplicable to Plaintiffs' Safety Act Preemption Claim.**

*Volkswagen* does not concern the Vehicle Safety Act. Moreover, the kind of state action challenged in *Volkswagen* is different from the one at issue here. *Volkswagen* involves the imposition of penalties for conduct that violated both state and federal law. *See, e.g.*, Amicus Br. 8. By contrast, compliance with the Data Access Law would require manufacturers to take affirmative actions that would put them out of compliance with federal law. *See, e.g.*, Pl.'s Post-Trial Proposed Findings of Fact ¶¶ 69, 72, 75, 78, 95 (ECF No. 236); Pl.'s Post-Trial Proposed Conclusions of Law ¶ 114. The United States' amicus brief in *Volkswagen* does not address Vehicle Safety Act preemption or affirmative state requirements that would compel manufacturers to act in ways contrary to federal law, because (unlike here) neither are at issue in that case.

The only source for the United States' views on preemption in *this* case is the Statement of Interest that the United States filed.  In that statement, the United States explained that compliance with the Data Access Law "requires vehicle manufacturers to redesign their vehicles in a manner that necessarily introduces cybersecurity risks, and to do so in a timeframe that makes design, proof, and implementation of any meaningful countermeasure effectively impossible."  Statement of Interest of the United States ("U.S. Statement") Ex. 1 at 5 (ECF No. 202).  The United States also emphasized the Vehicle Safety Act's forward-looking nature—stating that the "purpose of the Safety Act . . . is not to protect individuals from the risks associated with defective vehicles only after serious injuries have already occurred; it is to prevent serious injuries stemming from established defects before they occur."  U.S. Statement 5-6 (quoting *United States v. Gen. Motors Corp.*, 565 F.2d 754, 759 (D.C. Cir. 1977)).  And the United States spoke from experience in this area:  It was rightly concerned that implementation of the Data Access Law would create a safety defect similar to the 2015 FCA recall.  *Id.* at 6.

As Auto Innovators discussed at length in its earlier briefing, the Data Access Law conflicts directly with the Vehicle Safety Act's make-inoperative provision (49 U.S.C. § 30122(b)) and "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in the Vehicle Safety Act.  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 870 (2000) (addressing the Safety Act).  The Vehicle Safety Act therefore preempts the Data Access Law.

**II.    The United States' Amicus Brief in *Volkswagen* Is of Limited Applicability to Plaintiff's Clean Air Act Preemption Claim.**

The United States' amicus brief in *Volkswagen* is of more relevance to Auto Innovators' Clean Air Act preemption claim, but even then only indirectly.  The conduct at issue in *Volkswagen*—post-sale emissions updates and defeat devices—is far afield from the Data Access Law.  To the extent that the United States' preemption views in *Volkswagen* are applicable to this

3

case, it is the United States' observation that the Clean Air Act would preempt state regulation requiring manufacturers to change the design of their vehicles in order to comply with state law—which is at issue here but was not in *Volkswagen*. *See* Amicus Br. 13, 17.

The issue of Volkswagen's pre-sale conduct is not before the Supreme Court. *See* Amicus Br. 9. The Clean Air Act expressly preempts state laws that "enforce any standard relating to the control of emissions from new motor vehicles." 42 U.S.C. § 7543(a). Based on that provision, the Ninth Circuit held that the Clean Air Act preempts States and localities from imposing anti-tampering liability on manufacturers for pre-sale vehicle emissions software updates, and dismissed those claims. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1217-18 (9th Cir. 2020). That issue is not before the Supreme Court.

The pending *Volkswagen* case involves state and local liability only for post-sale conduct. The Ninth Circuit held that the Clean Air Act "preserves certain state and local authority over post-sale vehicles," and that Congress did intend to displace anti-tampering laws directed to that post-sale conduct. Amicus Br. at 10-11 (discussing *In re Volkswagen*, 959 F.3d at 1218-25). The United States agreed that there is no preemption on those particular facts. Amicus Br. 12-21. In doing so, the United States found it significant that compliance with the state and local regulations in *Volkswagen* did not require manufacturers to modify the original designs of their vehicles. *Id.* at 13, 17.

By contrast, this case does not concern exclusively post-sale conduct. Section 2 of the Data Access Law requires manufacturers to modify the design of their vehicles to standardize access to their on-board diagnostic systems and remove manufacturers from the authorization process for access. And Section 3 requires manufacturers to modify the design of their vehicles to create and deploy "an inter-operable, standardized and open access platform across all . . . makes and models"

that is "[d]irectly accessible by the owner through a mobile-based application," "[c]apable of securely communicating all mechanical data emanating directly from the motor vehicle via a direct connection to the platform," and gives users "the ability to send commands to in-vehicle components if needed for purposes of maintenance, diagnostics and repair." To comply with those requirements, manufacturers would have to modify the original design of their vehicles to disable, and thus to make inoperative, design elements that manufacturers install to help protect engine control modules, and thus vehicle emissions. Pl.'s Post-Trial Proposed Findings of Fact ¶¶ 93-95 (ECF No. 236).

These Data Access Law requirements to modify vehicle design are independent of any manufacturer's ability to turn off telematics systems in their vehicles. As Auto Innovators has explained, turning off telematics in an attempt at *avoidance* of Section 3's requirements to build and deploy a novel open-access telematics platform is not the same as *compliance* with those requirements. *See, e.g.*, Pl.'s Opp. to AG's Mot. to Reopen Evidence 8-11 (ECF No. 250); Pl.'s Post-Trial Proposed Findings of Fact ¶¶ 125-127 (ECF No. 236); Pl.'s Post-Trial Proposed Conclusions of Law ¶¶ 75-85 (ECF No. 236); Pl.'s Pre-Argument Br. 13 (ECF No. 215); Pl.'s Trial Brief 10 (ECF No. 173). And the changes required by Section 2 do not turn at all on whether telematics are enabled, *see* Data Access Law § 2, and the Data Access Law's provisions are inseverable, *see, e.g.*, Pl.'s Opp. to AG's Mot. to Reopen Evidence 11-12 (ECF No. 250); Pl.'s Post-Trial Proposed Conclusions of Law ¶¶ 137-143 (ECF No. 236). Thus, even if manufacturers turn off telematics to avoid Section 3 of the Data Access Law, they would still have to modify the

original design of their vehicles to comply with Section 2 of the Data Access Law.[1]

In a scenario like the one here, the United States suggested that state regulation would be preempted by the Clean Air Act. The United States explained in *Volkswagen* that Congress's purposes and objectives in the Clean Air Act would be inconsistent with state laws that "impose post-sale emissions standards that would have the practical effect of compelling manufactures to modify the original design of their vehicles." Amicus Br. at 17 (discussing 42 U.S.C. § 7543(d)). It added that the Act preempts any law with the "practical tendency to alter manufacturers' choices regarding the emission-control systems they install in new motor vehicles." Amicus Br. 13. The United States further emphasized that this preemptory effect extends broadly to any state regulation that would "pressure manufacturers to change the design of new engines." Amicus Br. at 13 (discussing *Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist.*, 541 U.S. 246, 254 (2004)).

## CONCLUSION

For the foregoing reasons, the United States' amicus brief in *Volkswagen* has limited applicability to this case. It has no bearing on the Vehicle Safety Act preemption claim. As to the Clean Air Act claim, the facts of *Volkswagen*—implicating post-sale updates to vehicle emissions

---

[1] During the October 28, 2021 status conference, the Attorney General also made reference to the First Circuit's recent decision in *NCTA – The Internet & Tv Ass'n v. Frey*, 7 F. 4th 1, 17 (1st Cir. 2021), which reaffirmed that a facial preemption claim requires the Court to determine that "no set of circumstances under which" the challenged state law would be valid. As the Attorney General acknowledges, this is the same standard the First Circuit has applied since at least 2001. Moreover, and as set forth in prior briefing, Plaintiff has met its burden to establish preemption under this standard, as the Attorney General's own experts both admitted, during the hot tub, that immediate *compliance* with the Data Access Law is impossible without disabling cybersecurity controls that would compromise vehicle safety in violation of the federal Vehicle Safety Act. *See* June 16 Tr. at 41:21 (Smith); *id.* at 42:1-3 (Romansky); *see also* June 15 Tr. at 118:11-13, 125:6-9 (Smith); *id.* at 185:23-186:8, 198:24-199:2 (Romansky). Accordingly, the concerns raised by the plaintiff are not hypothetical, but the consequence of the drafters of Data Access Law purposefully drafting a law that they knew would be impossible for OEMs to comply with.

software—are readily distinguishable from the facts presented here. Finally, the statements made by the United States in the *Volkswagen* amicus brief establish that the United States recognizes that on facts similar to those here, the Clean Air Act would preempt state laws that would have the practical effect of requiring manufacturers to alter the original design of their vehicles.

Dated: November 8, 2021

Respectfully submitted,

ALLIANCE FOR AUTOMOTIVE INNOVATION

By its attorneys,

/s/ Laurence A. Schoen
Laurence A. Schoen, BBO # 633002
Elissa Flynn-Poppey, BBO# 647189
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY, AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
lschoen@mintz.com
eflynn-poppey@mintz.com

John Nadolenco (*pro hac vice*)
Jason Linder (*pro hac vice*)
Daniel D. Queen (*pro hac vice*)
Erika Z. Jones (*pro hac vice*)
Eric A. White (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Tel: (202) 263-3000
jnadolenco@mayerbrown.com
jlinder@mayerbrown.com
dqueen@mayerbrown.com
ejones@mayerbrown.com
eawhite@mayerbrown.com

Charles H. Haake (*pro hac vice*)
Jessica L. Simmons (*pro hac vice*)
ALLIANCE FOR AUTOMOTIVE INNOVATION
1050 K Street, NW
Suite 650
Washington, DC 20001
Tel: (202) 326-5500
chaake@autosinnovate.org
jsimmons@autosinnovate.org

## CERTIFICATE OF SERVICE

    I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on November 8, 2021.

                                                         */s/ Laurence A. Schoen*
                                                         Laurence A. Schoen

118208706v.1