IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLIANCE FOR AUTOMOTIVE INNOVATION<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>MAURA HEALEY, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS in her official capacity,<br><br>　　　　Defendant. | C.A. No. 1:20-cv-12090-DPW |

**PLAINTIFF'S PROPOSED SCHEDULE FOR FURTHER PROCEEDINGS**

Despite good faith negotiations, the parties were unable to reach agreement on a proposed schedule for further proceedings in this matter. Plaintiff Alliance for Automotive Innovation ("Auto Innovators" or "Plaintiff") therefore makes this submission to set forth its proposed schedule for the two issues requested by the Court: (a) the proper interpretation of the initiative language; and (b) the steps taken by the parties, if any, to implement the initiative's requirements.

　　A.　The Proper Interpretation of the Initiative Language

On September 6, 2022, the Attorney General provided Plaintiff with a document setting forth the Attorney General's interpretation of certain terms and provisions of the Data Access Law. However, that document (attached here as Ex. 1) largely reiterates the Attorney General's litigation positions at trial, avoids interpreting certain provisions of the Data Access Law entirely, and in many places fails to provide any meaningful, practical interpretation. For example, the Attorney General's document fails to meaningfully clarify the Attorney General's position on what role, if any, an OEM is permitted under Section 2 of the Law, to have in authorization and/or authentication.

1

The Attorney General also fails to provide practical interpretations of provisions in the initiative. For instance, automakers can comply with Section 2 if they provide for an "authorization system for access to vehicle networks and their on-board diagnostic systems [that] is standardized across all makes and models sold in the Commonwealth and is administered by an entity unaffiliated with a manufacturer." Does that mean sold in the Commonwealth by just the specific OEM or by *all* OEMs? In other words, in order for an OEM to make use of this clause, must every single automaker whose vehicles are sold in the Commonwealth (whether new or used) agree to utilize the same authorization system?

While it remains the Plaintiff's position that the OEMs cannot comply with the plain language of the Data Access Law without violating their safety obligations under the Vehicle Safety Act, Plaintiff understood the Court to request a more robust discussion of the statutory interpretation issues that hopefully could narrow areas of disagreement. We are not off to an encouraging start.

Worse, the Attorney General couples her reiterated interpretations with an accelerated schedule that will ensure this endeavor fails. The Attorney General's proposed schedule simply does not allow time for a deeper dive on these interpretation questions. Thus, Plaintiff proposes that: (1) Plaintiff shall have until September 22, 2022 to serve the Attorney General with a response to the Attorney General's document, identifying areas of agreement and disagreement and where more clarification is needed, and also proposing interpretations of other language in the Data Access Law not currently addressed in the Attorney General's document; (2) the parties thereafter engage in back and forth discussions to try to further narrow the areas of disagreement and clarify the language; and (3) on or before October 14, 2022, the parties file a single document which identifies any areas of agreement and, for each area of disagreement, presents each side's proposed

interpretation of the Data Access Law. Even this is an ambitious schedule given the Attorney General's opening salvo. But it is a more realistic one.

In proposing this schedule, we recognize that the Court had previously indicated it hoped to have a submission on this issue by the end of September. But given the work to be done, Plaintiff respectfully submits that the additional two weeks would be worthwhile, and would not prejudice any party.

B. The Steps Taken By the Parties, If Any, To Implement The Initiative's Requirements

The Attorney General's unrealistic schedule also extends to the compliance issue the Court raised. During the hearing and in the Clerk's notes thereafter, the Court indicated that it wanted *both sides to explain* any compliance efforts. Sept. 1, 2022 Hearing Tr. at 9-10 ("So I want to know what the two representative parties have been doing since the statute had its effective date which, with the forbearance of the Attorney General, has not been executed upon."); *id.* at 24 (seeking evidence about what the Attorney General has done since the Data Access Law's effective date to "evidence your unbridled enthusiasm to get going on this"); ECF 279 (Clerk's notes of the hearing directing both parties to make submissions on "the steps, if any, by the parties to implement the initiative's requirements").[1] Also during the hearing, the Attorney General suggested that a proper way to proceed would be to have parties submit reports describing any compliance efforts and then follow up, if necessary, with depositions. Sept. 1, 2022 Hearing Tr. at 19-20 (proposing to get the evidence by "requiring the two OEMs to submit reports to the Court on whatever compliance options and then allowing us to take a 30(b)(6) of each of the OEMs after that"). In broad strokes—and as described more fully below—Plaintiff agrees with that approach.

---

[1] While the Attorney General agreed not to enforce the Data Access Law while the Court adjudicates its enforceability (and that stay remains in effect), that stay would not, for example, prohibit the Attorney General from seeking public comment on the notice provisions under Section 4, or from pursuing any appropriate rule-making or other steps that would not take effect unless and until the stay is lifted.

Unfortunately, after the hearing, the Attorney General went a different direction. Without seeking or obtaining leave to reopen discovery, the Attorney General sent Plaintiff proposed interrogatories that are unworkable and objectionable. In addition to going far beyond what the Court requested, they incorrectly assume, for example, that car companies have budgetary line items and policies dedicated at compliance efforts with the Data Access Law. There are a number of other problems with the interrogatories that will not be belabored here. The bottom line is that the Court asked both sides to explain their position on compliance and the Attorney General should not be allowed to put words in the car companies' mouths. As the Attorney General correctly suggested during the hearing, that explanation for the Plaintiff's side should come from the representative car companies themselves. And if the Attorney General decides she wants to follow-up on that explanation with depositions, so be it.

Thus, Plaintiff proposes that <u>both</u> parties shall have until October 31, 2022, to submit sworn affidavits to the Court describing the steps taken, if any, to implement the initiative's requirements. After the submission of those affidavits, if either party determines that Rule 30(b)(6) depositions are necessary to obtain further clarification of those points, Plaintiff proposes that the parties shall have until November 30 to complete those depositions, and until December 20, 2022 to submit any further briefing to the Court.

This schedule is longer than the Attorney General hoped, but it too is more realistic than her overly-ambitious schedule. For starters, the parties are no longer barreling toward an expedited trial. Since that trial, Mark Chernoby—FCA's main trial witness—has retired. It will take time to find a replacement witness and get that witness up to speed, and work with them to develop the affidavit described above. Though Kevin Tierney at GM has not retired and will re-engage with counsel on these efforts, he and his team understandably have other important professional

obligations that they must simultaneously address. And a hurried schedule here would prejudice Plaintiff's ability to provide the Court with the explanation requested. There is no reason for it.

Instead, both sides should make sworn submissions on the one question the Court asked them to address (namely, what efforts, if any, have been made to implement the initiative's requirements), and then if any further information is needed, depositions of those affiants can be taken.

Finally, and importantly, these compliance submissions will be far more meaningful if the Parties have the benefit of any agreements reached on the interpretation of the Data Access Law before the parties make submissions on what steps have been taken to implement it, as the interpretation of the law is of course inextricably intertwined with the issue of compliance efforts.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court enter the following Order:

1. Plaintiff shall have until September 22, 2022 to serve on the Attorney General the Plaintiff's views on the proper interpretation of the Data Access Law.

2. The parties shall thereafter confer on the interpretation issues.

3. On or before October 14, 2022, the parties shall submit a single document to the Court on the interpretation of the Data Access Law, identifying any areas of agreement, and for each area of disagreement, stating each Party's proposed interpretation. Each Party may, at the same time, separately submit a brief explaining its proposed interpretation(s) in further detail.

4. On or before October 31, 2022, each Party shall file sworn affidavits identifying the efforts, if any, made to implement the requirements of the Data Access Law.

5

5. If either Party determines that further information is required, they shall have until November 30, 2022 to conduct depositions of the other side's affiants.

6. The Parties shall have until December 20, 2022 to submit any further briefing to the Court.

For the convenience of the Court, a proposed Scheduling Order is attached as Exhibit 2.

Respectfully submitted,

PLAINTIFF ALLIANCE FOR AUTOMOTIVE INNOVATION,

By its attorneys,

*/s/ Laurence A. Schoen*

Laurence A. Schoen, BBO # 633002
Elissa Flynn-Poppey, BBO# 647189
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY, AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
lschoen@mintz.com
eflynn-poppey@mintz.com
annathanson@mintz.com

John Nadolenco (pro hac vice)
Erika Z. Jones (pro hac vice)
Jason D. Linder (pro hac vice)
Daniel D. Queen (pro hac vice)
Eric A. White (pro hac vice)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Tel: (202) 263-3000
jnadolenco@mayerbrown.com
ejones@mayerbrown.com
jlinder@mayebrown.com
dqueen@mayerbrown.com
eawhite@mayerbrown.com

Charles H. Haake (pro hac vice)
Jessica L. Simmons (pro hac vice)
ALLIANCE FOR AUTOMOTIVE INNOVATION
1050 K Street, NW
Suite 650
Washington, DC 20001
Tel: (202) 326-5500
chaake@autosinnovate.org
jsimmons@autosinnovate.org

## **CERTIFICATE OF SERVICE**

      I certify that on September 9, 2022, a true copy of this document will be sent electronically by the ECF system to attorneys of record identified on the Notice of Electronic Filing.

                                         */s/ Laurence A. Schoen*
                                         Laurence A. Schoen