IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLIANCE FOR AUTOMOTIVE INNOVATION<br><br>        Plaintiff,<br><br>   vs.<br><br>MAURA HEALEY, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS in her official capacity,<br><br>        Defendant. | C.A. No. 1:20-cv-12090-DPW |

**DEFENDANT ATTORNEY GENERAL MAURA HEALEY'S STATUS REPORT**

Defendant Attorney General Maura Healey submits this status report in response to the directions set forth by the Court in its September 1, 2022 hearing and subsequent electronic filing. *See* ECF No. 279. The Court directed the parties to submit either a joint proposal or separate proposals for further submissions to develop the evidentiary record on two issues: (i) the proper interpretation of the Data Access Law's language and (ii) what steps, if any, the representative OEMs have taken to implement the law's requirements. *Id.* Notwithstanding good-faith discussions, the parties have not agreed on a joint proposal. The key differences involve the position of the plaintiff Alliance for Automotive Innovation ("Alliance") not to produce the requested information promptly and consistent with the timeline contemplated by the Court (*i.e.*, at or near the end of September 2022, *see* Sept. 1 Hearing Transcript at 11:19-21); the Alliance's position that it should not have to respond to supplemental interrogatories and Rule 30(b)(6) depositions, but should instead provide affidavits on the designated OEMs' steps to implement the law's requirements and allow only those affiants to be deposed; and the Alliance's position that the Attorney General should provide an affidavit and be subject to a deposition on the status of her

1

office's efforts to implement the Data Access Law's requirements, notwithstanding the non-enforcement stipulation that the Attorney General has made at this Court's request.

### A. Interpretation of the Data Access Law's Language

The Attorney General provided her proposal for responding to the Court's directions to the Alliance's counsel in an email on the morning of September 6, 2022. *See* Exhibit ("Ex.") A. The Attorney General attached a Word document setting forth her interpretation of key terms in the Data Access Law and leaving a placeholder for the Alliance to set forth its positions, including whether it agrees with the Attorney General's interpretation of each term or believes that the term should be interpreted differently. *See* Ex. A at 4-8. This approach will allow each party to fully understand the other side's proposed interpretation of each aspect of the statute, and systematically assess where the parties' interpretations differ and whether either party's position has changed. The Attorney General proposed that the Alliance complete its portion of the document by September 15, with the option of the parties conferring before then. In the event that the parties could not reach agreement as to the meaning of all terms, each party would submit a brief to the Court by September 30 in support of their respective interpretations.

In response, the Alliance has stated that it cannot respond to the Attorney General's proposed interpretations or begin conferring before September 22, and that another three weeks should pass (*i.e.*, until October 14) before the parties notify the Court of areas of agreement and the parties' respective positions on areas of disagreement. *See* Ex. B at 5.[1] The Attorney General

---

[1] In its Proposed Schedule for Further Proceedings, the Alliance contends that "[w]e are not off to an encouraging start" because the proposed interpretations that the Attorney General provided it on September 6 do not include "meaningful, practical interpretation[s]" such as "clarify[ing] the Attorney General's position on what role, if any, an OEM is permitted under Section 2 of the Law to have in authorization and/or authentication." ECF No. 280 at 1-2. But, of course, there has already been a trial in this case, during which the Attorney General presented extensive evidence on precisely such "practical" issues. *See, e.g.*, Attorney General's Proposed Revised

respectfully objects to this counterproposal because it is inconsistent with the Court's direction that this project be completed at or near the end of September, *see* Sept. 1 Hearing Transcript at 11:19-21, and would further and unnecessarily delay final resolution of this case. As plaintiff, the Alliance bears the burden of proving that "'no set of circumstances exists" under which the Data Access Law would not be preempted by federal law. *NCTA – The Internet & TV Ass'n v. Frey*, 7 F.4th 1, 17 (1st Cir. 2021) (citations omitted). Having filed this action more than 21 months ago, the Alliance should not now require six weeks from the Court's September 1 hearing to say what it thinks the Data Access Law means and confer on any disputes.

### B.  Efforts by FCA and GM to Comply with the Data Access Law

Also on September 6, 2022, the Attorney General sent the Alliance supplemental interrogatories and Rule 30(b)(6) notices designed to develop evidence responsive to the Court's inquiry into the two purportedly "representative" OEMs' steps, if any, to implement the Data Access Law's requirements. *See* Ex. A. The supplemental interrogatories ask the OEMs – FCA US LLC ("FCA") and General Motors LLC ("GM") – to identify steps taken, funds spent, and personnel involved in researching and developing methods of compliance with Sections 2 and 3 of the Data Access Law, including but not limited to the potential methods of compliance the Attorney General presented at trial, such as developing the required platform or dongle, or

---

Substitute Findings of Fact and Conclusions of Law, ECF No. 232 ¶¶ 58-62, 171-96 (describing in detail, with supporting citations to expert testimony, how OEMs can comply with Section 2 and what roles they would have under different compliance solutions). This is not the time to relitigate those practical issues. Rather, the Alliance should be required to support its claim that "the OEMs cannot comply with the plain language of the Data Access Law without violating their safety obligations under the Vehicle Safety Act," ECF No. 280 at 2, by, for the first time in this litigation, clearly stating what it believes each term in the law means. Only after the Alliance does that can meaningful discussion occur between the parties regarding any differences in statutory interpretation.

disabling telematics systems in Model Year 2022 vehicles. *See* Ex. A at 9-16.[2] The Rule 30(b)(6) deposition notices address, respectively, efforts taken by FCA and GM since January 1, 2021 to comply with Sections 2 and 3 of the Data Access Law. *See* Ex. A at 17-24. The Attorney General proposed that, if these discovery requests are approved by the Court, the supplemental interrogatories should be due 15 days after service (consistent with the scheduling order of the Court in this case, *see* ECF No. 78, ¶ 3 ); the Rule 30(b)(6) depositions should take place the week of October 3-7; and the parties should submit any supplemental briefing at the end of the following week, October 14. *See* Ex. A at 2.

In response, on a video call between counsel for the parties on September 6, 2022, the Alliance initially contended that it should not have to respond to supplemental interrogatories because discovery has ended in the case. Instead, it proposed that it should submit a summary report on its designated members' compliance efforts. The Attorney General objected to the Alliance's position because the Court indicated in its electronic filing that it seeks to reopen discovery for these limited purposes. *See* ECF No. 279 (referring to "further submissions *and associated evidentiary development*" (emphasis added)). As a potential compromise between interrogatory responses or a summary report prepared by the Alliance, the Attorney General suggested the option that the Alliance submit an affidavit from each of the designated OEMs, GM and FCA, followed by Rule 30(b)(6) depositions.

The following afternoon, September 7, 2022, the Alliance sent a counterproposal via email. *See* Ex. B at 5-6. The Alliance proposed that it would provide affidavits from GM and FCA by

---

[2] Contrary to the Alliance's argument, the Attorney General's proposed interrogatories do not seek "to put words in the car companies' mouths," *see* ECF No. 280 at 4, but rather ask the OEMs to answer specific questions relevant to the Court's inquiry into their efforts (if any) to comply with the Data Access Law. If, for example, the OEMs cannot identify any funds they have spent on research and development for this purpose, they should simply say so.

4

October 31, and agree to one deposition per designated party, "if the [Attorney General] requires it", for completion by November 30. *See* Ex. B at 5. The Alliance proposed that the parties would then each have the right to submit any further briefing to the Court by December 20. *See* Ex. B at 6. In response, in an effort to reach agreement, the Attorney General was willing to agree to the Alliance providing affidavits from the designated OEMs instead of providing interrogatory responses, so long as the affidavits addressed the issues identified in the interrogatories, and the Attorney General would have an opportunity to conduct Rule 30(b)(6) depositions of each designated party after receiving their affidavits. Ex. B at 3-4. The Attorney General objected to the Alliance's timeline for providing the supplemental information on the grounds that this information should be readily ascertainable, and the Alliance's proposed schedule creates unnecessary delay. *See* Ex. B at 4. The Attorney General instead proposed that the Alliance provide affidavits from GM and FCA on their respective compliance efforts by September 29, after which the Attorney General would have the opportunity to take one Rule 30(b)(6) deposition of GM and FCA each, to be completed by October 7, and the parties would then submit any additional briefing to the Court by October 14. *Id.* Because the parties appeared to be close to agreement on the procedural steps to provide the additional information, the Attorney General proposed submitting a joint proposal to the Court on the planned steps to be taken, but which would present the parties' different proposed schedules for the Court's consideration. *Id.*

On September 8, the Alliance notified the Attorney General via email that the parties would not be able to reach agreement, and would need to each submit separate proposals to the Court. Ex. B at 3. The Alliance stated that it does not agree that the affidavits submitted by GM and FCA should cover the topics set forth in the interrogatories, asserting that many of the interrogatories were "overbroad, ambiguous, or otherwise objectionable." *Id.* The Alliance also stated that the

5

Attorney General should merely take the depositions of those two affiants, not Rule 30(b)(6) depositions of the OEMs themselves.  *Id.*[3]

Supplemental interrogatories followed by Rule 30(b)(6) depositions represent an efficient way to develop this issue, and can be completed on a schedule that avoids unnecessary delay.  The Alliance's proposed schedule for discovery into the designated OEMs' compliance efforts stretches over three months into the future, and needlessly delays resolution of this case.  The information regarding what, if any, efforts each designated OEM has taken to try to comply with the Data Access Law should be promptly ascertainable, and it should not require over six weeks, as the Alliance proposes, to get the OEMs' witnesses "up to speed" so that they can prepare affidavits describing these efforts.  *See* ECF No. 280 at 4.[4]

Therefore, the Court should reject the Alliance's proposal, and adopt the Attorney General's scheduling order, as outlined at the end of this status report.

### C.  Discovery on the Attorney General's Future Enforcement Plans

On Thursday, September 8, for the first time during the parties' discussions, and only after the Alliance decided not to agree to a joint proposal, the Alliance asserted that the Attorney General's office should also be required file an affidavit and then undergo a deposition regarding

---

[3] In the conclusion to its Proposed Schedule for Further Proceedings, the Alliance refers again to "depositions of the other side's affiants," ECF No. 280 at 6, but elsewhere suggests that Rule 30(b)(6) depositions may be acceptable, *see id.* at 4.

[4] In particular, because the evidence at trial has already established that neither FCA nor GM has attempted to comply with the Data Access Law since it was approved by the voters – *see* Attorney General's Proposed Revised Substitute Findings of Fact and Conclusions of Law, ECF No. 232 ¶¶ 134-51, 169-70; Trial Transcript Day 1, ECF No. 219, pp. 67:3-5 (Q: "And GM didn't do anything to find a technical solution after the law was passed either, correct?" A. "Not to my knowledge, no."), 112:10-12 (Q: "As far as you know, GM has made no efforts to develop a technical solution to the 2020 Data Access Law, correct?" A: "Correct."), 130:8-10 (Q: "And currently FCA has not taken any steps to create this type of platform; is that correct?" A: "That is correct.") – it should not be overly burdensome or time-consuming for those OEMs to report on any compliance steps they have taken since then.

"the status of efforts made, if any, to implement the Data Access Law's requirements." *See* Ex. B at 3.  The Attorney General objects to any such requirement for several reasons.

First, actions that a State might take in the future to implement or enforce a challenged statute are irrelevant to the merits of a facial, pre-enforcement preemption lawsuit like this one. *See Arizona v. United States*, 567 U.S. 387, 415 (2012) (where a lawsuit "against a sovereign State" challenges a law even before it "has gone into effect," courts must presume that the law will be implemented and construed in a way that avoids "a conflict with federal law"); *Capron v. Office of Attorney General*, 944 F.3d 9, 20 n.4 (1st Cir. 2019) (in pre-enforcement context, preemption claims involve "purely legal questions, where the matter can be resolved solely on the basis of the state and federal statutes at issue") (citation omitted), *cert. denied*, 141 S. Ct. 150 (2020).

Second, discovery by a regulated industry into the Attorney General's future enforcement plans is improper and barred by the opinion work product doctrine and deliberative process privilege.  As the Supreme Judicial Court has recognized, the Attorney General "is entrusted with the enforcement of the Commonwealth's laws, in large part through bringing civil enforcement proceedings, including the enforcement of G. L. c. 93A," *Commonwealth v. Exxon Mobil Corp.*, 187 N.E.3d 393, 398, 489 Mass. 724, 730 (2022), and judicial review of the Attorney General's enforcement decisions "would constitute an intolerable interference by the judiciary in the executive department of the government," *Shephard v. Attorney General*, 567 N.E.2d 187, 190, 409 Mass. 398, 401 (1991).  There is no precedent in state or federal law that would allow the Alliance to take discovery into the Attorney General's internal deliberations, legal discussions, or discretionary, non-final plans for activities that may occur only after the Alliance's pre-enforcement preemption claims are denied. To the contrary, federal courts recognize the deliberative process privilege, which affords "reasonable security to the

7

decisionmaking process within a government agency," *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)), and shields "predecisional, deliberative documents" as well as "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," *U.S. Fish and Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785-86 (2021) (citation omitted).[5]

Third, at this Court's request, the Attorney General has agreed to delay her enforcement responsibilities, including issuance of the notice required under Section 4 of the law, in order to allow the Court necessary time to rule on the Alliance's facial preemption claims. *See* ECF Nos. 50, 68, 244, 267, 271, 273. While the Alliance claims that it does not want the Attorney General to terminate her non-enforcement stipulation, *see* Ex. B at 1, its request for discovery on the Attorney General's implementation and enforcement of the Data Access Law is fundamentally inconsistent with that posture. By way of example, it would be highly confusing to the public for a draft, non-finalized notice to be released as a result of discovery in this litigation – particularly where the disclosure is irrelevant to the Alliance's facial, pre-enforcement claims, and where any actions the Attorney General takes after the Court rejects the Alliance's preemption claims will necessarily be informed by the Court's analysis of that law.

---

[5] The Alliance does not dispute the existence of these privileges, but rather argues that they do not apply to the fact that the Attorney General has not "promulgat[ed] regulations pursuant to the Law that would take effect only if the Law is ultimately upheld." *See* Ex. B at 3; *see also* ECF No. 280 at 3 n.1. The record in this case, however, already establishes that the Attorney General does not intend to promulgate regulations on the Data Access Law before final judgment is entered in this litigation. *See* Attorney General's Supplemental Memorandum on Rulemaking, ECF No. 227; Trial Transcript Day 5, pp. 54:12-18. No affidavit or deposition is required to further establish that fact.

Accordingly, the Alliance's request that the Attorney General be required to present evidence on implementation of the Data Access Law should be denied.

## CONCLUSION

Therefore, the Attorney General respectfully requests that the Court impose the following scheduling order:

1. The Attorney General provided the Alliance with her interpretations of the Data Access Law on September 6, 2022.

2. The Alliance will provide the Attorney General with its interpretations of the Data Access Law by no later than September 22, 2022.

3. The parties thereafter will engage in good faith discussion to try to narrow areas of disagreement, and file a joint submission with the Court no later than October 7, 2022, identifying areas of agreement and separately setting forth each party's position on any areas of disagreement.

4. The Attorney General will immediately serve the Alliance with supplemental interrogatories and deposition notices, in the form presented in Exhibit A to the Attorney General's Status Report.

5. The Alliance will respond to the Attorney General's supplemental interrogatories within 15 days of service.

6. The Attorney General will have the opportunity to take one Rule 30(b)(6) deposition of GM and FCA each, to be completed by October 7, 2022.

7. The parties may submit any additional briefing on the designated OEMs' compliance efforts to the Court by October 14, 2022.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | MAURA HEALEY<br>ATTORNEY GENERAL, |
|  | By her attorneys, |
| September 9, 2022 | */s/ Robert E. Toone*<br>Robert E. Toone, BBO No. 663249<br>Eric A. Haskell, BBO No. 665533<br>Phoebe Fischer-Groban, BBO No. 687068<br>Christine Fimognari, BBO No. 703410<br>  Assistant Attorneys General<br>Office of the Attorney General<br>One Ashburton Place<br>Boston, MA  02108<br>(617) 963-2178<br>robert.toone@mass.gov |

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on September 9, 2022.

*Robert E. Toone*
Assistant Attorney General