**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALLIANCE FOR AUTOMOTIVE INNOVATION | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MAURA HEALEY, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS in her official capacity, | ) ) ) ) |
| | ) |
| Defendant. | ) |

C.A. No. 20-12090-DPW

**NON-PARTY AUTO CARE ASSOCIATION'S BRIEF**
**REGARDING PLAINTIFF'S REQUEST FOR FURTHER DISCOVERY**

Plaintiff Alliance for Automotive Innovation ("AAI") seeks to use the discovery powers of this Court to prepare to fight a right to repair ballot initiative that is gathering momentum in a state other than the Commonwealth of Massachusetts and has no bearing on the issues in this lawsuit. But this Court must decide a narrow question that has nothing to do with a proposed ballot initiative in Maine: Has AAI proven that no set of circumstances exist under which a manufacturer could comply with the Massachusetts Data Access Law ("Data Access Law") and the federal Motor Vehicle Safety Act ("MVSA") or Clean Air Act ("CCA")?[1] The discovery now sought by AAI—18 months after the trial in this case concluded and three months after AAI learned about the Maine ballot initiative—has no bearing on that issue, will not assist the Court in answering that question, and will not help develop the record for appellate review. Rather, AAI's belated discovery requests would create a sideshow focusing on the text of another state's *proposed* ballot initiative that adds

---

[1] AAI must also prove that it has standing to challenge the Data Access Law, that it has a right of action to challenge the Data Access Law as preempted by MVSA or CAA, and that there are provisions of the MVSA or CAA that potentially conflict with the Data Access Law. *See generally* Attorney General's Motion to Dismiss (ECF No. 75).

nothing to the proceedings, yet further delays them. The Court should deny AAI's request for additional discovery from Auto Care Association ("ACA").

<u>**Background**</u>

ACA is a trade group that represents independent automotive "aftermarket" businesses. Affidavit of Aaron Lowe at ¶1 (ECF No. 161) ("Lowe Aff."). Aftermarket businesses include repair facilities that perform vehicle service, maintenance, and repair as well as businesses that manufacture, distribute, and sell motor vehicle parts, accessories, tools, equipment, materials, and supplies. *Id.* In August 2019, ACA assisted in the development of the ballot question that was submitted to the Attorney General and ultimately became the Data Access Law approved by 75% of Massachusetts voters. *Id.* Lowe Aff. at ¶¶ 82-85, 88.

On August 17, 2022, Maine citizens applied for a ballot initiative titled "An Act Regarding Automotive Right to Repair." Declaration of Amy Brink, Ex. A (ECF No. 308) ("Brink Decl."). On October 4, 2022, the Maine Secretary of State approved the final language of the ballot initiative. Brink Decl. Ex. B. Though ACA did not file the Maine ballot initiative, ACA supports it. *See, e.g., Auto Care Association Supports Maine Right to Repair Referendum* (Aug. 25, 2022).[2] For its part, AAI actively opposes the Maine ballot initiative. *See Alliance for Automotive Innovation Memo to Interested Parties*, *Dig Deeper: Maine Telematics Ballot Initiative* (October 22, 2022)[3]. *See also 'Right to Repair' progresses in Maine, but automakers are pushing back* (Oct. 20, 2022) (quoting Wayne Weikel, AAI's senior director for state affairs).[4]

---

[2] *Available at* https://www.autocare.org/news/latest-news/details/2022/08/25/auto-care-association-supports-maine-right-to-repair-referendum (last visited Dec. 6, 2022).

[3] *Available at* https://www.autosinnovate.org/about/advocacy/right-to-repair/Maine%20Ballot%20Memo%20to%20Interested%20Parties.pdf (last visited Dec. 6, 2022).

[4] *Available at* https://www.newscentermaine.com/article/news/politics/maine-politics/right-to-repair-progresses-as-automakers-push-back-business/97-a1baaf56-ca60-44f2-9cae-6698f4bdf813 (last visited Dec. 6, 2022).

## Argument

Despite acknowledging in the last pages of its brief that it is seeking discovery in a case where trial was concluded 18 months ago, AAI cites cases regarding the standard for reviewing the relevance of evidence admitted during trial. *See Gonpo v. Sonam's Stonewalls & Art.*, 41 F.4th 1, 14 (1st Cir. 2022) (affirming lower court's admission of trial evidence); *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010) (addressing relevance of admitted trial evidence). This is the wrong standard. The proper standard here is: (1) whether the evidence sought to be introduced is important or probative to the issues in the case at bar; (2) whether the moving party provides a *bona fide* explanation for not seeking to introduce the evidence earlier; and (3) whether reopening the evidence will cause undue prejudice to the nonmoving party. *Rivera-Flores v. P.R. Te. Col*, 64 F.3d 742, 746 (1st Cir. 1995).

AAI's request fails out of the gate because the evidence sought by AAI regarding the proposed Maine ballot initiative is neither important nor probative of whether the Data Access Law is preempted by federal law. On this basis alone, the Court would be well within its discretion to deny AAI's request to reopen the evidence. *Id.* ("Trial courts as a rule act within their discretion in refusing to reopen a case where the proffered 'new' evidence is sufficiently probative to offset the procedural disruption caused by reopening."). Second, AAI has not proffered a *bona fide* reason why it seeks this evidence now. At the Court's direction, the parties submitted briefs regarding their textual interpretation of the Data Access Law on October 14, 2022, after AAI learned of the Maine ballot initiative. Brink Decl. at ¶ 5. AAI's brief addresses the Maine ballot initiative and the textual differences between the proposed Maine law and the Massachusetts Data Access Law. Plaintiff's Brief Regarding Textual Interpretation of the Data Access Law (ECF No. 293) at 2, 9 ("Pl.s Brief Regarding Textual Interp."). The discovery AAI now seeks pertains to the same issues it already

briefed. Third, allowing additional discovery would unduly prejudice ACA because of the unfair advantage AAI would receive by obtaining confidential information not relevant to the litigation before the Court but very much relevant to the parties' future efforts in Maine, as well as the overbroad nature of the document requests and proposed 30(b)(6) topics.

### A.  Evidence Regarding the Proposed Maine Ballot Initiative Is Not Probative of Whether the Massachusetts Data Law is Preempted by Federal Law

To prevail on its claim of conflict preemption, AAI must prove "no set of circumstances" exists under which a manufacturer could comply with the MVSA or CCAA and the Data Access Law. *NCTA – The Internet & TV Ass'n v. Frey*, 7 F.4th 1, 17 (1st Cir. 2021). The evidence AAI now seeks has nothing to do with that issue. Rather, AAI argues that it is entitled to post-trial discovery to "uncover the rationale" for relatively minor differences between the text of the Data Access Law and the subsequent Maine ballot initiative. Plaintiff's Brief Regarding Maine Ballot Initiative and Further Discovery (ECF No. 307) at 1 ("Pl.'s Brief"). But neither the text of the proposed Maine ballot initiative, nor the motivations of its supporters, are probative of the federal preemption question in Massachusetts. *Brueswitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (criticizing use of post-enactment legislative history to interpret a statute). The closest AAI comes to explaining the purported relevance is to speculate that the Maine ballot initiative is not identical to the Data Access Law because the proponents "recognize that several of the law's requirements are problematic." Pl.'s Brief at 3. Not only is that conclusion unsupported by the trial record, *see generally* Lowe Trial Testimony (ECF No. 220) at 64-69, 76-78, 83 ("Lowe Testimony"), but ACA's state of mind has no bearing on whether "no set of circumstances exist" under which manufacturers could comply with the Data Access Law. *NCTA – The Internet & TV Ass'n v*, 7 F.4th at 17.

Moreover, even if ACA's state of mind is probative of the issues before the Court, which it is not, none of the four differences between the Data Access Law and the proposed Maine ballot

initiative identified by AAI are probative of whether any set of circumstances exist under which manufacturers could comply with the Data Access Law. Rather, a plain reading of both the proposed Maine ballot initiative and the Data Access Law show that they seek to accomplish the same thing: provide vehicle owners safe and secure access to the information needed to diagnose, maintain, and repair their vehicles.

*First*, AAI places great significance on the omission of the phrase "otherwise related to" from the definition of "mechanical data" in the proposed Maine ballot initiative. Pl.'s Brief at 2-3. AAI contends that discovery should be reopened because its omission "suggests" that the drafters of the Data Access Law recognize that its inclusion in the Data Access Law is "problematic." *Id.* at 3. Apart from the irrelevance to this litigation of the reasons *why* a phrase may have been excluded from another state's subsequent ballot initiative, the parties have already extensively briefed their textual interpretation of this language and its impact on manufacturers' obligations under the Data Access Law.

The Attorney General interprets "mechanical data" "to include the vehicle's pre-defined diagnostic functions and any data generated, stored, or transmitted by the vehicle and used for vehicle diagnostics, maintenance, or repair, but *not* data *unrelated* to diagnostics, maintenance, or repair. " Def.'s Brief on Textual Interpretation of the Data Access Law (ECF No. 292) at 17 (emphasis in original) ("Def.'s Brief on Textual Interp."). As the Attorney General has explained, this interpretation comports with the common definition of "relate to," which means "to connect (something) with (something else)." *Id.* at 17-18. This interpretation is consistent with the purpose of the Data Access Law and other provisions of the law that expressly *exclude* non-diagnostic and repair information. Mass. G.L. c 93K, ("Nothing in this chapter shall be construed to require manufacturers or dealers to provide an owner or independent repair facility access to non-diagnostic

and repair information provided by a manufacturer to a dealer or by a dealer to a manufacturer pursuant to the terms of a franchise agreement."). The proposed Maine ballot initiative's omission of this phrase has no bearing on the proper interpretation of this definition in the Data Access Law.

Moreover, ACA's former vice-president for regulatory and government affairs, Aaron Lowe, already testified regarding this issue at trial. Lowe testified that the definition of "mechanical data" "was intended to serve as a catchall to make sure that everything a repair shop would need to repair a car would be available to it." Lowe Testimony at 64:9-13. Lowe testified that he did not understand the definition of "mechanical data" to go further than that. To the contrary, he testified that "mechanical data" would only include "information necessary to repair the car." *Id.* at 64:14-15; 65:13-15. That is the same goal of the proposed Maine ballot initiative. *See Frequently Asked Questions, Ballot Initiative, What would the initiative do for consumers?*, *available at https://mainerighttorepair.org/index.html* ("It would give Maine car and truck drivers access to all of the diagnostic and repair data generated by their own vehicles."). Additional evidence on this point from ACA would add nothing to the Court's analysis or the appellate record.[5]

*Second*, AAI seeks to re-open discovery on the supposed differences between the requirements for the establishment of an independent entity to administer access to vehicle-generated data in the Data Access Law and the proposed Maine ballot initiative. However, the *only* distinction between the two texts on this point is that while the Data Access Law requires that an independent entity be created, the proposed Maine ballot initiative would require that the Attorney General designate the independent entity. Brink Decl. at Ex. C. As it pertains to the Court's conflict preemption analysis, how the independent entity is created is a distinction without a difference.

---

[5]     AAI argues that the omission of the "otherwise related to" phrase from the Maine ballot initiative suggests that the language is "significant." Pl.'s Brief at 3. It is just as likely that the phrase is not included in the Maine ballot initiative because the drafters did *not* consider it significant.

There is no dispute that the independent entity required by the Data Access Law is not yet operational, just as it is not operational in Maine. Lowe Testimony at 13:13-15. But what matters is whether such an entity *could* be created that would allow manufacturers to comply with the Data Access Law. *See CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1275 (9th Cir. 2021) ("current design" of vehicles is irrelevant; preemption hinges on whether there is any possible future implementation of the Data Access Law that would not violate federal law). On that point, the trial evidence is clear. The Attorney General has proven that an independent entity could be established that utilizes an authorization system that would not compromise the security or integrity of vehicle networks, such as using public key infrastructure ("PKI"), a certificate-based authentication system, and other standards. *See generally* Affidavit of Brian Romansky, ¶¶ 24-27, 42-54, 65, 74; Affidavit of Greg Potter, ¶¶ 14-17, 36-37. Moreover, the trial record shows that manufacturers can work with aftermarket stakeholders to select an independent entity to administer safe and secure data services. See Affidavit of Steve Douglas, ¶ 2 (describing the Secure Data Release Model ("SDRM") administered by the National Automotive Service Task Force ("NASTF")). The text of the proposed Maine ballot initiative does not impact the ability of an independent entity to safely administer secure certificates as already described in the record.

Moreover, the Data Access Law does not require ACA to unilaterally establish the independent entity (indeed, it does not require ACA to do anything). Establishment of the independent entity requires manufacturers to participate. *See* Lowe Testimony at 89:15-18 ("I can't see how this law can be properly implemented without the manufacturers being a part of it. They . . . design cars. They're absolutely critical. So they have to be involved in the development of that process."). However, despite the Court's specific questions regarding compliance efforts, AAI has by its own admission done nothing to comply with the Data Access Law. Affidavit of Stephen

Knight (ECF No. 297) at 3 (Stellantis "has not taken any specific steps to comply with this particular law . . . ."); Affidavit of Kevin Tierney (ECF No. 296) at 5 ("The short answer is that GM cannot implement those requirements (as it understands them) at this time, and therefore has not implemented those requirements."). Not only have the manufacturers done nothing to comply with the Data Access Law, they have rebuffed ACA's efforts to even discuss how an independent entity could work. Lowe Aff. at ¶88 ("Auto Innovators rebuffed our efforts to work with us to implement the law . . . Auto Care's strategy is to include the OEM's as key stakeholders in the governance model."). Discovery regarding the text of the proposed Maine ballot initiative would not change the trial evidence that proved that, if the manufacturers would participate, an independent entity could be created that would ensure safe and secure compliance with the Data Access Law.

*Third*, AAI seeks discovery regarding why the application for the citizen initiative in Maine included references to possible ISO standards while the Data Access Law does not. As an initial matter, the proposed ballot initiative approved by the Maine Secretary of State does *not* include references to ISO standards. *Compare* Brinks Decl. Ex. A and B. The final text of the ballot initiative as modified by the Maine secretary of state reads, "The independent entity shall . . . Identify and adopt relevant standards for implementation of this section and relevant provisions for accreditation and certification of organizations and for a system for monitoring policy compliance." Brinks Decl. B. Thus, the language regarding possible ISO standards with which AIA concerns itself will never become law. But even the draft text in the application for citizen initiative (which is not the text that is now part of the ballot initiative), would not have required that the independent entity adopt any specific standards. Rather, it would have required that the entity "identify and adopt relevant standards for implementation of the Maine law (*anticipated to include* [several ISO standards]." Brinks Decl. Ex. A. *Why* the application referenced "anticipated" standards is not

probative of the conflict preemption issue. Indeed, the trial testimony was well developed that there are standards that could be implemented that would allow the manufacturers to comply safely. *See* Romansky Aff. ¶¶ 46-55, 65, 74.

*Fourth*, AAI seeks discovery regarding *why* the Maine ballot initiative uses the phrase "owner-authorized access platform" while the Data Access Law uses the phrase "open access platform." Again, the trial record is fully developed on this issue. An open access platform can still use security to ensure safety and privacy of the consumer. Affidavit of Craig Smith, ¶¶ 115-17. "Open access" does not mean that information can be "accessed without restriction," as AAI proposes. Joint Submission Regarding Textual Interpretation at 12 (ECF No. 290). As the Attorney General has explained, AAI's overly broad interpretation ignores the text of Section 3 immediately following "open access," which makes clear that the platform must "securely communicate" and be accessible "upon authorization of the vehicle owner." Def.'s Brief on Textual Interpretation at 12. In other words, the Maine ballot initiative and the Data Access Law would require the same thing of manufacturers: a platform that allows vehicle owners to securely access their mechanical data upon the owner's authorization. Why the sponsor of the Maine ballot initiative proposed a very slightly different approach to get to the same place has no probative value to the issues the Court must resolve here.

### B.  AAI Has Not Offered a *Bona Fide* Reason Why it Failed to Seek the Introduction of the Evidence it Now Seeks From ACA

To re-open the evidence now that the trial in this matter has long since concluded, AAI must provide a *bona fide* explanation for why it failed to seek to introduce the evidence earlier. *Rivera-Flores*, 64 F.3d at 746. AAI was aware of the Maine ballot initiative in August 2022, over three months ago. Brink Decl. at ¶ 5. In fact, in October 2022, AAI submitted its brief on textual interpretation of the Data Access Law. In its brief, AAI placed the Maine ballot initiative front and

center to support its textual interpretation ("Tellingly, the group that sponsored the Data Access Law realized its error and has taken a different approach in its latest initiative, in Maine. The Maine ballot language implicitly acknowledges a key flaw of the Data Access Law and attempts to correct it . . . ."). Pl.'s Brief Regarding Textual Interp. at 2.

Despite the purported importance of the Maine ballot initiative to AAI's textual interpretation—and its full knowledge of the initiative—AAI never raised the prospect of additional evidence until well *after* it filed its textual interpretation brief.  AAI has proffered no reason, let alone a *bona fide* reason, why it waited to seek evidence on a point that it has already raised in its briefing.

### C.  AAI's Overbroad Discovery Requests and Proposed Deposition Topics Would Unduly Prejudice ACA

Re-opening the evidence would cause undue prejudice to ACA. *See Rivera-Flores*, 64 F.3d at 746. It is no secret that AAI and ACA take divergent positions on many issues, including the Maine initiative. AAI's document request and proposed deposition topic regarding the Maine initiative would require ACA to reveal to AAI a host of sensitive and confidential information that has no bearing on this litigation. For example, the requests would require ACA to reveal its advocacy and public relations strategies, internal analyses, communications with supporters, and financial information pertaining to the Maine initiative. Discovery on those issues would have no probative value in this litigation yet give AAI an unwarranted and unfair advantage in potential future disputes between the parties on right to repair issues. In addition, despite characterizing its discovery requests and proposed Rule 30(b)(6) deposition topics as "carefully cabined" to avoid imposing an undue burden on ACA, AAI's document requests and proposed topics are anything but. For example, AAI seeks "Documents and Communications concerning the Maine initiative, including the differences between the statutory language proposed by the Maine initiative and the

Data Access Law, and the reason for such differences." Pl.'s Brief at Ex. A. In other words, AAI places no limitation on the documents and communications "concerning the Maine initiative" it seeks. ACA, though not the applicant of the citizen initiative, supports the ballot initiative and devotes advocacy resources toward its adoption. ACA expects that there could be voluminous documents "concerning the Maine Initiative" that have nothing to do with the choice of statutory language. It would create an undue burden and needless expense for ACA to collect and review these documents, particularly considering the lack of probative value of *any* documents concerning the Maine initiative.

AAI also seeks discovery regarding efforts to establish the independent entity contemplated by Section 2 and standardized authorization systems, such as Secure Vehicle Interface (SVI) and Extended Vehicle (ExVe). Pl.'s Brief at Ex. A. Such discovery would be cumulative and unduly burdensome because ACA has already provided discovery on these issues prior to trial. In response to AAI's document subpoenas, ACA produced tens of thousands of pages of documents on these and other topics as well as produced two witnesses for deposition. AAI proffers no reason why ACA should need to "update" the discovery, at significant expense, simply because the Court has not yet ruled.

## Conclusion

For the foregoing reasons, Auto Care Association respectfully requests that the Court deny

Auto Innovators' request for additional discovery from Auto Care Association.

Dated: December 6, 2022

Respectfully submitted,

AUTO CARE ASSOCIATION

By its attorneys,

**THOMPSON HINE LLP**

*/s/ David A. Wilson*
David A. Wilson, BBO No. 552388
1919 M Street, NW
Washington, DC 20036
Tel.: 202.331.8800
david.wilson@thompsonhine.com

Steven A. Block (*pro hac vice pending*)
20 N. Clark Street, Suite 3200
Chicago, IL 60602
Tel.: 312.998.4200
steven.block@thompsonhine.com

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on December 6, 2022.

/s/ David A. Wilson
David A. Wilson