# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLIANCE FOR AUTOMOTIVE INNOVATION<br><br>Plaintiff,<br><br>vs.<br><br>MAURA HEALEY, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS in her official capacity,<br><br>Defendant. | C.A. No. 1:20-cv-12090-DPW |

**PLAINTIFF ALLIANCE FOR AUTOMOTIVE INNOVATION'S OPPOSITION TO AUTO CARE ASSOCIATION'S MOTION FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

                                                                                   **Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ................................................................................................................................ 5

       A.     ACA Is Not Entitled To A Protective Order With Respect To Deposition Topic 1, For Which It Has Highly Relevant Information ...................................... 6

              1.     ACA's Document Production Proves That ACA Has Relevant Evidence That Auto Innovators Can Only Elicit In A Deposition ............ 6

              2.     The Recent Retirement Of Aaron Lowe Is Not Grounds For A Protective Order ........................................................................................ 9

       B.     ACA Cannot Avoid A Deposition On Topics 2 To 4 Based Purely On Its Counsel's Representation .................................................................................... 12

CONCLUSION ........................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anaqua, Inc. v. Schroeder*,
   2012 WL 12960760 (D. Mass. Sep. 14, 2012) ..........................................................................10

*Anderson v. Cryovac, Inc.*,
   805 F.2d 1 (1st Cir. 1986) ..........................................................................................................5

*In re Ex Parte Application of Pro-Sys Consultants and Neil Godfrey, Applicants*,
   2016 WL 4154306 (D. Mass. Aug. 5, 2016) ..........................................................................11

*Berwind Prop. Grp. v. Env't Mgmt. Grp.*,
   233 F.R.D. 62 (D. Mass 2005) .................................................................................................10

*Conning v. Halpern*,
   2020 WL 5803188 (D. Mass Sep. 29, 2020) ..........................................................................11

*Doe v. Trump*,
   329 F.R.D. 262 (W.D. Wash. 2018) ..........................................................................................8

*E.E.O.C. v. Texas Roadhouse, Inc.*,
   2014 WL 4471521 (D. Mass. Sep. 9, 2014) ............................................................................12

*Foley v. Blake*,
   2022 WL 3088049 (D. Mass. Aug. 3, 2022) .............................................................................8

*Goguen v. Textron Inc.*,
   476 F. Supp. 2d 5 (D. Mass 2007) .............................................................................................9

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
   593 F. Supp. 2d 298 (D. Mass. 2009) ........................................................................................5

*Heagney v. Wong*,
   2016 WL 2901731 (D. Mass. May 18, 2016) ...........................................................................5

*Miramar Constr. Co. v. Home Depot, Inc.*,
   167 F. Supp. 2d 182 (D.P.R. 2001) ...........................................................................................9

*In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*,
   2015 WL 13715289 (D. Mass. July 31, 2015) ..................................................................10, 11

*Prozina Shipping Co., Ltd. v. Thirty-Four Autos.*,
   179 F.R.D. 41 (D. Mass. 1998) ..............................................................................................5, 6

**Other Authorities**

Fed. R. Civ. P. 26............................................................................................................................5

Fed. R. Civ. P. 30..................................................................................................................5, 9, 10

Steven S. Gensler, 1 Fed. R. of Civ. P., Rules and Commentary (2022)...................................9, 10

## INTRODUCTION

Auto Care Association ("ACA") and other proponents of the Massachusetts ballot initiative that became the Data Access Law have renewed their efforts by pushing a similar "right-to-repair" ballot initiative in Maine. Though the two ballot initiatives share many of the same problematic features that introduce significant cybersecurity threats to vehicles, the Maine initiative includes several major differences that its proponents apparently hoped would fix the Data Access Law's deficiencies. Now that ACA has produced documents in response to Auto Innovators' document subpoena, there is no question that ACA was intimately involved in crafting these language changes. Indeed, ACA's documents unequivocally establish that *ACA itself* drafted the most significant changes between the two laws, and that it was involved in "calls" and "discussions" in which other changes were planned. But the document production does not reveal the contents of those "calls" and "discussions," and it does not document ACA's reasons for these changes. To learn these facts and understand the whole picture, Auto Innovators needs to depose an ACA representative.

Before ACA counsel even reviewed ACA's documents, ACA threatened to and now does seek a protective order preventing Auto Innovators from taking that deposition. ACA does not, and cannot, dispute that it directed the relevant revisions to the Data Access Law. Instead, ACA argues that its primary representative in these discussions was Aaron Lowe, its former Vice President for Regulatory and Government Affairs, who conveniently stopped working for ACA just weeks ago. Citing Lowe's recent resignation, ACA claims that it cannot produce a knowledgeable witness who could testify on these topics. But nothing is stopping ACA from designating Mr. Lowe as its 30(b)(6) representative. Even if it did not designate Mr. Lowe as its representative, ACA would have an obligation to interview Mr. Lowe so that its designated

1

representative could convey whatever information Mr. Lowe has. ACA's motion does not even try to explain why neither of these solutions is possible.

ACA also argues that it should not have to offer deposition testimony on other topics related to OEMs' inability to comply with the Data Access Law because ACA did not have any relevant communications on these topics. But Auto Innovators does not need to accept counsel's say-so about this; Auto Innovators has a right to test ACA's purported lack of knowledge through sworn deposition testimony. And ACA has not shown how such a deposition would be burdensome.

It is ACA's burden to establish why a protective order is warranted here, and ACA simply has not met that burden. The Court therefore should order that ACA produce a 30(b)(6) representative to testify on the four limited topics that Auto Innovators has noticed.

## BACKGROUND

ACA has been deeply involved in this action—and in the underlying Data Access Law—from its inception. ACA drafted and campaigned for the petition that is now the Data Access Law. June 15, 2021 Tr. 13:6-12, 18:9-21:6 (describing ACA's role in drafting the ballot initiative and seeking its passage). Aaron Lowe, ACA's longtime Vice President for Regulatory and Government Affairs, led ACA's efforts. *Id.* at 13:2-12, 14:1-4. The Attorney General therefore identified Aaron Lowe as one of her two fact witnesses at trial, and Mr. Lowe provided extensive testimony about ACA's role in drafting the Data Access Law, the specific language used in the law, the intent underlying that language, and his views concerning automakers' ability to comply with the law. *See, e.g.*, ECF No. 191 (Lowe Trial Aff.) ¶¶ 82-89; June 15, 2021 Tr. at 13:6-22, 18:9-19:25, 26:13-32:6, 63:22-69:23. The Attorney General, in turn, has relied on Mr. Lowe's testimony both to advance its particular interpretation of the Data Access Law's language and to argue that compliance with that law is possible. *E.g.*, ECF No. 292 (Def.'s Br. on Textual

2

Interpretation of the Data Access Law) at 4, 9, 19; ECF No. 232 (Def.'s Proposed Revised Substitute Findings of Fact and Conclusions of Law) ¶¶ 61-62, 193.

Thus, when ACA and its allies began advocating for a new ballot initiative in Maine—one similar to the Data Access Law, but with several material language changes—Auto Innovators asked this Court for limited document and deposition discovery from ACA bearing on those changes. *See* ECF No. 307 (Pl's. Br. Regarding Maine Ballot Initiative and Further Discovery) at 1-7. As Auto Innovators explained at the time, these changes to the language of the Data Access Law underscore that it is impossible for OEMs to comply with that law. *Id.* at 3, 7.

Auto Innovators and ACA briefed this issue between November 22 and December 13, 2022. *See* ECF Nos. 307-13. The Court then held a hearing on Auto Innovators' requested discovery on January 5, 2023. At that hearing, the Court concluded that it would permit discovery on communications between ACA, on the one hand, and the Maine Right to Repair Coalition and Maine Attorney General, on the other. ECF No. 323-1 (Jan. 5, 2023 Hr'g Tr.) at 10:22-11:7.

During the hearing—before he had even reviewed any potentially responsive documents—ACA's counsel informed the Court that it "question[ed] the need for [a 30(b)(6)] deposition, particularly until we see what the document collection looks like." *Id.* at 16:19-21. ACA's counsel stated that Aaron Lowe, who was the "point person on this for [ACA]," had retired in 2022. *Id.* at 17:5-12. ACA's counsel noted that ACA had retained Mr. Lowe as a consultant through "[t]he end of 2022" (*id.* at 17:10-12)—*i.e.*, less than a week before the hearing, and *after* the parties had completed their briefing on Auto Innovators' request for discovery. Based upon ACA's objection, the Court directed the parties to proceed with document productions, and then if there were still a dispute about holding a 30(b)(6) deposition, the Court would "have a hearing immediately on that" so the Court could resolve the issue. *Id.* at 17:24-18:18. A few days after the hearing—before its

3

counsel even received Auto Innovators' subpoena—ACA's counsel informed Auto Innovators that it would, in fact, seek a protective order with respect to the 30(b)(6) deposition. ECF No. 319 (Joint Stip. and Prop. Scheduling Order) at 1.

On January 11, Auto Innovators served deposition and document subpoenas that were limited to the scope that the Court specified in the January 5 hearing. *See* ECF Nos. 323-3, 323-4 (Subpoenas). Auto Innovators' deposition subpoena in particular sought testimony on four topics:

1. Your Communications with, and Documents sent to/from, the Third Parties concerning the Maine Initiative, including the differences between the statutory language proposed by that initiative and the Data Access Law, and the reason for such differences.

2. Your Communications with, and Documents sent to/from, the Third Parties concerning efforts to establish the "entity unaffiliated with a manufacturer" and "standardized" authorization system required by the Data Access Law from June 2021 to the present.

3. Your Communications with, and Documents sent to/from, the Third Parties concerning efforts to develop the purported means of compliance with the Data Access Law that the Defendant has proposed in this action, such as a telematics-enabled "dongle," Extended Vehicle (ExVe) technology, and Secure Vehicle Interface (SVI), from June 2021 to the present.

4. Your Communications with, and Documents sent to/from, the Third Parties from June 2021 to the present concerning motor vehicle manufacturers' ability of inability to comply with the Data Access Law.

ECF No. 323-4 (Dep. Subpoena) at 6. Auto Innovators' accompanying document subpoena included four requests corresponding to these four topics. ECF No. 323-3 (Doc. Subpoena) at 6-7. In each subpoena, the term "Your" was defined to include ACA and its various representatives, while the term "Third Parties" was defined to include the Maine Attorney General, the Maine Right to Repair Coalition, and their various representatives. *Id.* at 5-6; ECF No. 323-4 at 5-6.

On January 27, ACA produced various documents in response to Auto Innovators' requests. *See* Declaration of Daniel D. Queen ("Queen Decl.") ¶ 2. That production included communications between ACA and the Right to Repair Coalition from June 2022 to December

4

2022 concerning the Maine ballot initiative—including a number of communications exchanging drafts of the Maine ballot initiative and ACA's revisions to those drafts. *Id.*; *see also id.* Exs. A-F.

After making that production, ACA's counsel sent an email to Auto Innovators asking that it withdraw its deposition subpoena and emphasizing that Aaron Lowe "has retired from ACA and has no current affiliation with the organization." ECF No. 323-2 (Jan. 2023 email chain) at 3. In response, Auto Innovators' counsel explained that ACA's document production to date actually underscored the need for a deposition, that Rule 30 did not require an organization to designate a current employee as a representative, and that ACA alternatively could designate a current employee to testify based upon an interview of Mr. Lowe. *Id.* at 2. Auto Innovators did not receive a response to these points. Instead, ACA filed this motion. *See* ECF No. 322 (Non-Party Auto Care Association's Motion for a Protective Order) ("Mot.").

## ARGUMENT

The Court should deny ACA's motion. A district court may issue a protective order only "for good cause shown." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 5 (1st Cir. 1986) (citing Fed. R. Civ. P. 26(c)). "The burden of demonstrating good cause rests on the proponent of the protective order." *Haemonetics Corp. v. Baxter Healthcare Corp.*, 593 F. Supp. 2d 298, 301 (D. Mass. 2009) (citing *Public Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 789 (1st Cir. 1988)). "To show good cause, the party seeking the protective order must demonstrate a particular need for protection; broad allegations of harm, unsubstantiated by specific examples or articulated reasons, do not satisfy the Rule 26(c) test." *Heagney v. Wong*, 2016 WL 2901731, at *3 (D. Mass. May 18, 2016) (citations and internal quotation marks omitted). "Prohibiting the taking of depositions is an extraordinary measure," and "[t]he moving party has a heavy burden of showing 'extraordinary circumstances' based on 'specific facts' that would justify such an order." *Prozina Shipping Co., Ltd. v. Thirty-Four Autos.*, 179 F.R.D. 41, 48 (D. Mass. 1998) (citations omitted).

Here, ACA does not even come close to meeting that "heavy burden." *Id.* The documents that ACA has produced thus far unequivocally establish that ACA was deeply involved in, and has relevant knowledge of, the revisions to the Data Access Law in the new Maine initiative—which is the subject of Auto Innovators' first deposition topic. ACA could easily offer Mr. Lowe or a representative educated by Mr. Lowe to testify on that topic. And to the extent ACA's counsel is correct that ACA does not have any information regarding the remaining three deposition topics, ACA's designee can quickly confirm that lack of knowledge in the deposition.

**A.     ACA Is Not Entitled To A Protective Order With Respect To Deposition Topic 1, For Which It Has Highly Relevant Information**

*1.     ACA's Document Production Proves That ACA Has Relevant Evidence That Auto Innovators Can Only Elicit In A Deposition*

Auto Innovators' Deposition Topic No. 1 addressed ACA's communications with, and documents sent to and from, the Right to Repair Coalition "concerning the Maine initiative, including the differences between the statutory language proposed by that initiative and the Data Access Law, and the reason for such differences." ECF No. 323-3 (Dep. Subpoena) at 6. ACA's motion contends that "there is nothing to be discovered in a deposition" of ACA on this topic, arguing that the *absence* of certain specific information in its document production means that a deposition would be pointless. Mot. 5. To the contrary, ACA's document production establishes that there *is* highly relevant information that Auto Innovators would obtain in a deposition of an ACA representative on this topic, and that a deposition is the only way to obtain that information.

The documents produced by ACA demonstrate that Aaron Lowe and other ACA employees were intimately involved in the drafting of the Maine ballot initiative. Mr. Lowe, Right to Repair Coalition Director Tommy Hickey, and their lobbyists and counsel exchanged drafts of the Maine ballot initiative reflecting edits discussed in various "calls" and "discussions" between those individuals. *E,g.*, Queen Decl. Ex. B at -869, Ex. C at -871, Ex. E at -829, -830, -832.

6

Throughout the correspondence, Mr. Lowe and ACA insisted upon various revisions to the draft initiative, demonstrating that ACA effectively "had the pen," and Hickey referred to Mr. Lowe as the "client." *E.g.*, *id.* Ex. B at -869; Ex. C at -871; Ex. D at -814; Ex. E at -830; Ex. F at -897.

Critically, the documents establish that when ACA developed the Maine Initiative, it consciously revised much of the Massachusetts Data Access Law language at the heart of this case. The original draft of the Maine ballot initiative was "based on the Massachusetts law," and its substantive provisions were virtually identical to those in the Data Access Law. *See* Queen Decl. Ex. A at -805, -807-08. But, following Lowe's and other participants' "calls" and "discussions," they revised the draft to include four critical changes:

1. The direction to the Maine Attorney General to "designate an independent entity" to administer access to vehicle on-board diagnostic systems;

2. The designation of specific (theoretical) standards that the Attorney-General-designated independent entity was supposed to adopt;

3. The change to the definition of "mechanical data" to exclude data "otherwise related to" the diagnosis, repair, or maintenance of the vehicle; and

4. The omission of the phrase "open access" from the requirements for a Section 3 platform for accessing mechanical data.

*Compare* Queen Decl. Ex. A at -807-08 *with id.* Ex. F at -899-902. As Auto Innovators explained when it initially sought this discovery, each of these language changes goes to the heart of OEMs' inability to comply with the Data Access Law. *See* ECF No. 307 (Pl's. Br. Regarding Maine Ballot Initiative and Further Discovery) at 2-6.

For instance, it is impossible for the OEMs to comply with the Data Access Law's requirement that the "authorization system for access to vehicle networks and their on-board diagnostic systems is standardized across all makes and models sold in [Massachusetts] and is administered by an entity unaffiliated with a manufacturer." Data Access Law § 2. A "standardized" access system and "unaffiliated" entity do not exist. *See, e.g.*, ECF No. 233 (Pl.

7

Post-Trial Proposed Findings of Fact and Conclusions of Law) ¶ 114; ECF No. 293 (Pl's. Br. Regarding Textual Interpretation of the Data Access Law) at 5, 8-9. Apparently acknowledging these deficiencies, and following a "discussion" with Hickey, Lowe drafted language to include in the Maine ballot initiative requiring that the Maine Attorney General "designate [that] independent entity," and the "independent entity" would in turn "identify and adopt relevant standards required for implementation of the Maine law." Queen Decl. Ex. B at -869. Lowe then solicited additional input from ACA's "Emerging Technology team" that resulted in additional revisions to the independent entity's standardization mandate. *Id.* Ex. F at -897, -900.

Auto Innovators is entitled to a deposition to question ACA about these changes to the Data Access Law. ACA's document production establishes that ACA was intimately involved in drafting these revisions. But the documents (likely strategically) do not address the critical inquiry for which Auto Innovators sought this discovery—namely, ***why*** ACA made those revisions, and whether those revisions reflect ACA's understanding that the OEMs simply cannot comply with the Massachusetts Data Access Law. No doubt those issues were addressed in the various "calls" and "discussions" between ACA and the Right to Repair Committee that are referenced throughout ACA's correspondence. *See, e.g.*, Queen Decl. Ex. B at -869, Ex. C at -871, Ex. E at -829, -830, -832. Indeed, ACA's motion tellingly does not contend otherwise; rather, ACA merely argues that "none of the *produced documents*" addressed those issues. Mot. 3 (emphasis added). The Court therefore should permit a deposition of ACA for Auto Innovators to fill in these evidentiary gaps. *See, e.g.*, *Doe v. Trump*, 329 F.R.D. 262, 274 (W.D. Wash. 2018) ("Parties are ordinarily entitled to test . . . document production through depositions," including where "the opposing party's responses to date have raised as many question as they have answered"); *Foley v. Blake*, 2022 WL

3088049, at *2 (D. Mass. Aug. 3, 2022) (compelling deposition where "the witness almost certainly possesses relevant and unique discoverable information").

### 2. *The Recent Retirement Of Aaron Lowe Is Not Grounds For A Protective Order*

ACA never disputes its role in crafting the Maine ballot initiative language, including the key language differences from the Massachusetts Data Access Law. Instead, ACA argues that it would be "burdensome" and "a waste of time and resources for all involved" because Mr. Lowe, "the only ACA employee that communicated with the Maine Right to Repair Coalition regarding the text of the Maine ballot initiative[,] is now retired." Mot. 1. As ACA's counsel disclosed at the parties' last hearing, Mr. Lowe was a retained consultant for ACA right up until "the end of 2022"[1]—weeks *after* Auto Innovators sought discovery from ACA.

ACA's argument has no merit. First, even if Mr. Lowe were the ACA employee with the most intimate knowledge of ACA's role in the drafting of the Maine ballot initiative and its rationale for proposing revisions from the Data Access Law, nothing prevents ACA from designating Mr. Lowe as its 30(b)(6) representative. Indeed, parties regularly designate former employees as their 30(b)(6) representatives where appropriate. *See, e.g.*, *Goguen v. Textron Inc.*, 476 F. Supp. 2d 5, 10 (D. Mass 2007) (defendant "identified a former employee . . . as [its] Rule 30(b)(6) witness"); *Miramar Constr. Co. v. Home Depot, Inc.*, 167 F. Supp. 2d 182 (D.P.R. 2001) ("former employee . . . was also [plaintiff's] designated corporate representative for a Rule 30(b)(6) deposition"); Steven S. Gensler, 1 Fed. R. of Civ. P., Rules and Commentary, Rule 30 (2022) ("the person designated [to testify under Rule 30(b)(6)] need not even be an employee"). ACA never explains why it could not simply designate Mr. Lowe as its 30(b)(6) witness so that he could provide his direct knowledge on this topic. Auto Innovators' counsel raised this possibility

---

[1] ECF No. 323-1 (Jan. 5, 2023 Hr'g Tr.) at 17:7-12.

to ACA's counsel before ACA sought a protective order (ECF No. 323-2 at 2), yet ACA does not address it in its motion.

Second, even if Aaron Lowe were somehow unable to testify on ACA's behalf, ACA could simply designate another witness who, in turn, could interview Mr. Lowe to learn about his communications and revisions to the Maine ballot initiative. *See, e.g.*, *Berwind Prop. Grp. v. Env't Mgmt. Grp.*, 233 F.R.D. 62, 65 (D. Mass 2005) (Rule 30(b)(6) designee must be prepared "to the extent the matters are reasonably available, whether from documents, *past employees*, or other sources") (citation and quotation marks omitted; emphasis in original); *Anaqua, Inc. v. Schroeder*, 2012 WL 12960760, at *5 (D. Mass. Sep. 14, 2012) ("If necessary, the deponent must use . . . past employees" to prepare for a 30(b)(6) deposition) (quoting *Briddell v. St. Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005)); Gensler, *supra* (subpoenaed party has a duty to prepare witness, and preparation of 30(b)(6) witness may include "interviews with . . . prior employees"). Again, though Auto Innovators raised this possibility before ACA sought a protective order (ECF No. 323-2 at 2), ACA does not address it in its motion.

ACA's cases do not establish otherwise. ACA cites a series of cases for the unremarkable proposition that an organization need only provide a deponent to testify about information "known or reasonably available to" that organization. *See* Mot. 5-6 (citing *Dravo Corp. v. Liberty Mut. Ins. Co.,* 164 F.R.D. 70 (D. Neb. 1995), *Calzaturficio S.C.A.R.P.A., s.p.a. v. Fabiano Shoe Co.,* 201 F.R.D. 33 (D. Mass. 2001), and *QBE Ins. Corp. v. Jorda Enters.*, 277 F.R.D. 676 (S.D. Fla. 2012)). But ACA never explains why Mr. Lowe's knowledge is not "reasonably available to" it,

10

particularly when ACA employed Mr. Lowe as recently as a few weeks ago, and the relevant events all occurred within the past year.[2]

ACA's argument is particularly deficient given the narrow scope of the planned deposition. Consistent with this Court's prior order, Auto Innovators would not (and cannot) conduct a broad inquiry into every aspect of the Maine ballot initiative and ACA's role in that initiative. Rather, Auto Innovators' deposition would be focused exclusively on ACA's communications with the Right to Repair Coalition, and in particular its communications about the language that changed between the Data Access Law and the Maine initiative. That is not a lengthy inquiry; it could be completed quickly and efficiently without any "waste of time and resources" as ACA claims. Mot. 1; *see also, e.g.*, *Conning v. Halpern*, 2020 WL 5803188, at *5 (D. Mass Sep. 29, 2020) (compelling deposition that would "incur only minimal burden and expense"); *In re Ex Parte Application of Pro-Sys Consultants and Neil Godfrey, Applicants*, 2016 WL 4154306, at *2 (D. Mass. Aug. 5, 2016) ("A one-day deposition about the subject matter of emails and documents authored by [the deponent] is not burdensome.").

In short, ACA can easily offer a witness who can satisfy its 30(b)(6) obligations—whether that is Mr. Lowe himself or a current employee whom Mr. Lowe has educated. Such a deposition would impose little burden on ACA, and its motion does not establish otherwise. At the very least, to the extent ACA refuses to fulfil its 30(b)(6) obligations, the Court should grant Auto Innovators leave to subpoena Mr. Lowe to testify about these matters in his individual capacity, subject to the same limited scope that the Court previously ordered.

---

[2] Similarly, ACA cites *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, 2015 WL 13715289, at *9 (D. Mass. July 31, 2015), as an instance where a court granted a protective order because the corporation "ha[d] no officers, directors, managing agents or others" with relevant knowledge. But *In re New England* only reached that conclusion given the "unique circumstances of th[at] case, . . . where not only most of the principals of the corporation have been indicted and have expressed an intention to invoke their Fifth Amendment rights but where the corporation has also filed for bankruptcy and is no longer operating." *Id.* Of course, no similar "unique circumstances" exist here.

### B. ACA Cannot Avoid A Deposition On Topics 2 To 4 Based Purely On Its Counsel's Representation

ACA's remaining deposition topics concern post-trial developments that may affect OEMs' ability to comply with the Data Access Law—including efforts to develop the "entity unaffiliated with a manufacturer" and "standardized" authorization system as well as efforts to develop the Attorney General's proposed means of compliance with the law. ECF No. 323-4 (Dep. Subpoena) at 6. ACA argues that a deposition of its representative is not justified with respect to these topics because, according to ACA's counsel, there were no "communications, written or oral," regarding these topics with the Right to Repair Committee or Maine Attorney General. Mot. 7.

It certainly appears that ACA (like the Massachusetts Attorney General) has not done anything to develop an "entity unaffiliated with a manufacturer," a "standardized" authorization system, or any other means that OEMs could use to comply with the Data Access—much less any such means that would reduce or eliminate the substantial cybersecurity risks that that law poses. Indeed, it is apparently for precisely this reason that ACA's revisions to the draft Maine ballot initiative attempt to place this obligation on the *Maine* Attorney General. *See* Queen Decl. Ex B at -869 (Lowe's revisions require the Maine Attorney General to designate the "independent entity" that will "identify and adopt relevant standards").

Nevertheless, ACA does not cite any authority suggesting that Auto Innovators must rely on its counsel's representations that ACA had no communications on these topics. To the contrary, Auto Innovators should be permitted a deposition so that it may confirm, through sworn testimony, that no relevant communications exist. *See, e.g.*, *E.E.O.C. v. Texas Roadhouse, Inc.*, 2014 WL 4471521, at *4 (D. Mass. Sep. 9, 2014) ("Defendants are entitled to test th[e] assertion" that all relevant documents have been produced "by asking questions . . . designed to make sure that they

12

have all the documents to which they are entitled."). If ACA's counsel is correct, then the deposition on these topics will be correspondingly brief: after Auto Innovators establishes that no documents or communications exist, no more questioning would be necessary. Accordingly, ACA cannot explain why a protective order is justified with respect to these topics, either, and the Court should reject its request.

## CONCLUSION

For the foregoing reasons, Auto Innovators respectfully requests that the Court deny ACA's Motion for a Protective Order and allow it to proceed with a deposition of Auto Care Association. Alternatively, the Court should grant Auto Innovators leave to subpoena Mr. Lowe to testify about these matters in his individual capacity.

Dated: February 15, 2023

Respectfully submitted,

ALLIANCE FOR AUTOMOTIVE INNOVATION

By its attorneys,

*/s/ Laurence A. Schoen*
Laurence A. Schoen, BBO # 633002
Elissa Flynn-Poppey, BBO# 647189
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY, AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
lschoen@mintz.com
eflynn-poppey@mintz.com

John Nadolenco (*pro hac vice*)
Erika Z. Jones (*pro hac vice*)
Jason D. Linder (*pro hac vice*)
Daniel D. Queen (*pro hac vice*)
Eric A. White (*pro hac vice*)

13

MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Tel: (202) 263-3000
jnadolenco@mayerbrown.com
ejones@mayerbrown.com
jlinder@mayerbrown.com
dqueen@mayerbrown.com
eawhite@mayerbrown.com

Charles H. Haake (*pro hac vice*)
Jessica L. Simmons (*pro hac vice*)
ALLIANCE FOR AUTOMOTIVE INNOVATION
1050 K Street, NW
Suite 650
Washington, DC 20001
Tel: (202) 326-5500
chaake@autosinnovate.org
jsimmons@autosinnovate.org

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on February 15, 2023.

*/s/ Laurence A. Schoen*
Laurence A. Schoen