UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALLIANCE FOR AUTOMOTIVE INNOVATION,<br><br>Plaintiff,<br><br>v.<br><br>ANDREA JOY CAMPBELL, ATTORNEY GENERAL OF THE COMMONWEWALTH OF MASSACHUSETTS in her official capacity,<br><br>Defendant. | CIVIL ACTION<br>NO. 1:20-cv-12090-DPW |

**NOTICE OF INTENT TO TERMINATE NON-ENFORCEMENT STIPULATION**

Defendant Attorney General Andrea Joy Campbell respectfully provides notice of her intent to terminate the non-enforcement stipulation previously entered in this case, effective June 1, 2023.  Following termination, the Office of the Attorney General will issue the notice required by Section 4 of the Data Access Law.

The voters of Massachusetts overwhelmingly approved the Data Access Law on November 3, 2020, and the law took effect the following month.  The plaintiff Alliance for Automotive Innovation ("Alliance") filed suit on November 20, 2020.  ECF No. 1.  At the outset of this case, the Court determined that the case should be decided not based on a motion to dismiss or motion for preliminary injunction, but rather based on a full evidentiary record developed at trial.  Accordingly, the plaintiff Alliance for Automotive Innovation withdrew its motion for a preliminary injunction on December 7, 2020.  ECF No. 51.  After the Attorney General moved to dismiss all claims, ECF No. 75, the Court denied the motion to dismiss on Counts I and II "without prejudice to development on the merits" and deferred a ruling on dismissing the other claims.  ECF Nos. 92-93.  After three and a half months of fact and expert

1

discovery, the Court held a nonjury trial on Counts I and II, taking evidence on June 14-16, 2021, and hearing the parties' arguments on June 25 and July 21, 2021. ECF Nos. 205, 207-08, 218, 237.

During this period, the Attorney General agreed to delay engaging in any action pursuant to her notice and enforcement authority, as provided for by the Data Access Law, Mass. G.L. c. 93K, §§ 2(g) & 6, in order to allow the Court to rule on the Alliance's facial preemption claims. At a status conference on December 3, 2020, the Court asked the Attorney General to enter into a non-enforcement stipulation until after trial. The Attorney General then filed a non-enforcement stipulation lasting until July 1, 2021. ECF No. 50. At a case management conference on December 14, 2020, the Court stated that trial would begin on June 14, 2021 and that "we'll proceed on the assumption that the stipulation will extend to no later than August 1 by grace of the Attorney General." ECF No. 73 at 5-6. The Attorney General so extended her stipulation. ECF No. 68. After trial, on September 16, 2021, the Court invited the Attorney General "to make a Further Modified Stipulation to adjust the relevant date necessary for an extensive period of consideration in support of a fully satisfactory opinion until no later than November 2, 2021, bringing this case to an appealable final judgment." ECF No. 243. She did so. ECF No. 244.

On October 22, 2021, the Attorney General moved to reopen the evidence to show that certain manufacturers (Subaru and Kia) had implemented policies whereby they could immediately comply with both Section 3 of the Data Access Law and federal law by disabling any telematics system in a Model Year 2022 or newer vehicle; in connection with that motion, the Attorney General volunteered "to extend her stipulation concerning her enforcement of the Data Access Law." ECF No. 245 at 2. That new evidence was submitted by January 14, 2022.

ECF Nos. 262-63.  At a hearing on February 2, 2022, the Court asked if the Attorney General would extend her stipulation to March 7, 2022, ECF No. 268 at 34-35, and she did so, ECF No. 267.  On March 8, 2022, citing "unforeseen and unforeseeable circumstances," the Court invited the Attorney General "to make a Final Further Modified Stipulation" to "no later than April 15, 2022," ECF No. 270, and she did so, ECF No. 271.  On April 15, 2022, the Court invited the Attorney General to extend her stipulation to "no later than July 1, 2022," ECF No. 272, and she did so, ECF No. 273.  The Office of the Attorney General's April 22, 2022 Further Modified Stipulation "reserve[d] the right to revise this stipulation in the event that adjudication of those claims is delayed beyond July 1, 2022, but further stipulate[d] that it will do so only after first providing 14 days' advance notice to the plaintiff and the Court of its intent to do so."  ECF No. 273.  That Further Modified Stipulation remains in effect today.

At a hearing on September 1, 2022, the Court outlined the "process for evaluating continuing claims of confidentiality in light of the forthcoming Memorandum of Findings and Conclusions," but also directed the parties to make further submissions "deemed necessary by the Court to provide a full development of the record especially with respect to the Court's exercise of its equitable powers, whether in connection with a period of stay pending appeal or otherwise, in addressing Plaintiff's claims."  ECF No. 279.  On October 7, 2022, the parties filed a joint submission regarding textual interpretation of the Data Access Law, ECF No. 290, and on October 14, 2022, the parties submitted briefs on interpretations in dispute, ECF Nos. 292-93.  On October 21, 2022, the parties submitted declarations addressing efforts made to implement the law's requirements.  ECF Nos. 295-97.  At a conference on November 8, 2022, the Alliance requested additional post-trial discovery from the Auto Care Association ("ACA") regarding a proposed ballot initiative in Maine, ECF No. 305, and on January 5, 2023, the Court allowed the

3

Alliance to take limited discovery on that issue, ECF No. 318.  Pursuant to stipulations between the Alliance and ACA, written discovery on that issue occurred during January 2023, and deposition discovery on that issue will conclude no later than March 24, 2023.  *See* ECF No. 319-20 & 327-28.  The Court has ordered the parties to file a status report by March 31, 2023.  ECF No. 328.

Termination of the Attorney General's non-enforcement stipulation effective June 1, 2023, is in the public interest.  The people of Massachusetts deserve the benefit of the law they approved more than two years ago.  Consumers and independent repair shops deserve to know whether they will receive access to vehicle repair data in the manner provided by the law.  Auto manufacturers ("OEMs") and dealers need to understand their obligations under the law and take action to achieve compliance.  In January 2021, the Court warned the Alliance's members that "if their business planning is not including thinking about" the Data Access Law "coming into play at some point," they were "whistling by the graveyard on it."  ECF No. 94 at 40.  Nevertheless, the evidence at trial in June 2021 showed that neither of the two "representative" OEMs, GM and FCA (now Stellantis), had attempted to comply with the law, ECF No. 232 at FF ¶¶ 134-51, 169-70, and those two companies confirmed their refusal to make any efforts to comply with the law in declarations filed on October 21, 2022, ECF Nos. 296-97.

There are several, independently sufficient grounds by which the Court can resolve this case.  First, the Alliance does not have standing to assert preemption claims on behalf of its members, where the evidence has shown that OEMs can and have taken different approaches to complying with the Data Access Law and some are already in compliance.  ECF No. 232 at CL ¶¶ 1-10; ECF No. 263 at 15-19.  Second, under *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 325-26 (2015), the Alliance does not have a private right of action to challenge the

Data Access Law as preempted by either the Federal Motor Vehicle Safety Act ("MVSA") or Clean Air Act ("CAA").  ECF No. 232 at CL ¶¶ 11-28.  Third, the Alliance's claims fail on their face because there is no provision in MVSA or CAA or any regulation promulgated thereunder that even potentially conflicts with the Data Access Law; NHTSA's federal motor vehicle safety standards do not address vehicle cybersecurity and the CAA affirmatively requires OEMs to share information about emissions control diagnostics.  ECF No. 76 at 4-17; ECF No. 86 at 1-13; ECF No. 232 at CL ¶¶ 71-81, 90-93, 102-09.  Fourth, even if there were a potential conflict, the Alliance has failed to satisfy its burden of proving that there is no set of circumstances under which any OEM could comply with both state and federal law, where the evidence has shown that some OEMs are already securely complying with the Data Access Law and the Alliance's experts acknowledged at trial that other OEMs can comply if they devote the resources and time to make appropriate changes to their cars' architectures.  ECF No. 217 at 2-15; ECF No. 232 at FF ¶¶ 50-74, 171-245, CL ¶¶ 82-89, 94-101.  Each of these four grounds warrants dismissal of the Alliance's claims and judgment for the Attorney General.

      In addressing the Court's prior requests for stipulations of non-enforcement, the Attorney General has sought to balance competing concerns.  On the one hand, recognizing the demands of a busy trial court, the technical complexity of the trial evidence, and the disruptions of the COVID-19 pandemic during the litigation of this case, the Attorney General has deferred to the Court's view that it needs more time and further evidence to produce an opinion that brings "this case to an appealable final judgment."  ECF No. 243.  On the other hand, the Attorney General has a specific statutory duty to issue the notice provided for under Section 4 of the Data Access Law—a statutory command approved by 75% of Massachusetts voters over two years ago—as well as more general statutory and common-law duties to defend and enforce the laws of the

Commonwealth.  *See Commonwealth v. Exxon Mobil Corp.*, 489 Mass. 724, 730-31, 187 N.E.2d 393, 398-99 (2022).  After consideration of these competing concerns, the Attorney General has determined that the non-enforcement stipulation should soon come to an end.  Accordingly, the Attorney General respectfully notifies this Court that the non-enforcement stipulation will terminate effective June 1, 2023, and that she will issue the notice required by Section 4 of the Data Access Law shortly thereafter.

Respectfully submitted,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL,

By her attorneys,

March 7, 2023

   */s/ Eric Haskell*
Robert E. Toone, BBO No. 663249
Eric A. Haskell, BBO No. 665533
Phoebe Fischer-Groban, BBO No. 687068
Christine Fimognari, BBO No. 703410
  Assistant Attorneys General
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
(617) 963-2178
robert.toone@mass.gov

**CERTIFICATE OF SERVICE**

I certify that a true copy of this document will be sent electronically by the ECF system to attorneys of record identified on the Notice of Electronic Filing.

March 7, 2023

  */s/ Eric Haskell*
Eric A. Haskell
Assistant Attorney General