# EXHIBIT A



7101 Wisconsin Avenue   T: 301.654.6664
Suite 1300   F: 301.654.3299
Bethesda, MD 20814   info@autocare.org
autocare.org

June 19, 2023

Sophie Schulman
Deputy Administrator
National Highway Traffic Safety Administration
1200 New Jersey Avenue, SE
Washington, D.C. 20590

Kerry E. Kolodziej
Assistant Chief Counsel for Litigation and Enforcement
National Highway Traffic Safety Administration
1200 New Jersey Avenue SE
Washington, D.C. 20590

Dear. Deputy Administrator Schulman and Assistant Chief Counsel Kolodziej:

Auto Care Association represents the interests of more than 500,000 businesses providing automotive aftermarket products and services. Our members include parts manufacturers and distributors, parts stores, and independent service and repair shops. The vehicle aftermarket is an over $400 billion industry comprised of more than 4.7 million American professionals.

Auto Care Association supports the rights of consumers and fleet owners to safely and securely access vehicle data to allow them choices regarding where they repair and maintain their vehicles. Accordingly, Auto Care Association supports the Massachusetts Data Access Law, enacted in November 2020 with the support of 75% of Massachusetts voters (the "Data Access Law"). The Data Access Law requires manufacturers to allow vehicle owners to securely access telematics data necessary to diagnose, repair and maintain their automobiles and commercial trucks.

We are writing with regard to NHTSA's June 13, 2023, letter to vehicle manufacturers that was submitted to the district court in Massachusetts hearing the vehicle manufacturers' challenge to the Data Access Law. We are disappointed that NHTSA misapprehends the requirements of the Data Access Law and, therefore, erroneously concluded that the Data Access Law "poses significant safety concerns." June 13, 2023, NHTSA Letter at 2 ("NHTSA Letter"). NHTSA's summary conclusion is based on its belief that the Data Access Law requires "open remote access to vehicle telematics," whereby vehicle data would be unencrypted and allow anyone to remotely send commands to a vehicle to manipulate safety-critical functions. *Id.* at 3.

This is not the case. NHTSA appears to have adopted the Alliance for Automotive Innovation's (the "Alliance") overly broad interpretation of the Data Access Law that is belied by the Massachusetts Attorney General's more reasonable interpretation and the language of the law itself.



7101 Wisconsin Avenue
Suite 1300
Bethesda, MD 20814
autocare.org

T: 301.654.6664
F: 301.654.3299
info@autocare.org

The Alliance, and apparently NHTSA, interprets "open access" to mean that "the relevant device or technology . . . can be accessed without restriction." ECF No. 290 at 12. The Data Access Law, however, provides that the "open access platform" "shall be capable of *securely* communicating all mechanical data emanating directly from the motor vehicle" and "*upon authorization of the vehicle owner*, all mechanical data shall be directly accessible by an independent repair facility or class 1 dealer . . . *limited to the time to complete the repair or for a period of time agreed to by the vehicle owner for the purposes of maintaining, diagnosing, and repairing the motor vehicle*" Data Access Law, § 3 (emphasis added). Like the Alliance's interpretation, NHTSA's interpretation of the Data Access Law in its June 13, 2023, letter reads out the word "securely" and the other limitations on the access and use of vehicle telematics data.

The Massachusetts Attorney General, the government entity that would enforce the Data Access Law on behalf of the Commonwealth, interprets "open access" to require "the platform and the mechanical data it communicates to be freely accessible to the owner, without the OEM acting as a gatekeeper." ECF No. 292 at 14. Importantly, the Attorney General has determined that "an open access platform *can still use security controls to ensure the safety and privacy of the consumer.*" *Id.* (emphasis added). In addition, the Data Access Law does not require access to "all of the electronic networks of the vehicle" for any purpose whatsoever, as the Alliance has maintained. ECF No. 290 at 3. Rather, the Attorney General interprets the phrase "access to vehicle networks and their onboard diagnostics systems" to refer only to access for "obtaining data related to the purposes of diagnosis, repair, or maintenance." ECF No. 292 at 10. Put simply, "open access" does not require that all vehicle telematics data be unsecure or available to "malicious actors." NHTSA Letter at 3. Rather, it explicitly requires that mechanical data necessary to diagnose, maintain, or repair be *securely* available to the vehicle owner.

At the June 2021 trial regarding the Alliance's challenge to the Data Access Law, the vehicle manufacturers' own technical experts were forced to conclude that the Data Access Law did not present unreasonable safety concerns if the law was interpreted pragmatically, and not in the extremely broad manner advanced by the Alliance (and now by NHTSA). For example, under questioning by United States District Judge Douglas Woodlock, one of the Alliance's experts, Daniel Garrie, agreed that when the Data Access Law is interpreted more reasonably, "[i]t seems a lot more feasible." Tr. III:58. Another Alliance technical expert, Bryson Bort, similarly conceded that under the interpretation of the Data Access Law advanced by the Attorney General, the technical solutions proposed by the Attorney General's technical experts were "not far-fetched." Tr. III:70-71, and would involve only "a minor level of doing that risk assessment and potential rearchitecture," which he "wouldn't anticipate . . . being an exponentially burdensome piece," Tr. III:75. Bort further testified that if the Data Access Law was interpreted to include only telematics data needed to diagnose, maintain and repair vehicles (as opposed to "all" data), "that's a different scope, and I wouldn't have an issue with that." Tr. III:79.



7101 Wisconsin Avenue
Suite 1300
Bethesda, MD 20814
autocare.org

T: 301.654.6664
F: 301.654.3299
info@autocare.org

In sum, Auto Care Association believes that NHTSA's recently-adopted position that the Data Access Law is preempted by the National Traffic and Motor Vehicle Safety Act because compliance would pose serious safety risks is inconsistent with (1) the plain text of the statute, (2) the reasonable interpretation of the Data Access Law's terms advanced by the Massachusetts Attorney General, and (3) the Alliance's own experts' opinions that manufacturers could safely comply with the law. It does not appear that NHTSA considered these factors when formulating its new position.

Auto Care Association would like the opportunity to meet with NHTSA to discuss this matter further and provide additional detail regarding the ability of vehicle manufactures to safely comply with the Data Access Law. We look forward to hearing from you promptly so that we may schedule a mutually agreeable time to meet.

Sincerely,

William J. Hanvey
President/CEO
Auto Care Association