IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLIANCE FOR AUTOMOTIVE INNOVATION<br><br>Plaintiff,<br><br>vs.<br><br>ANDREA JOY CAMPBELL, ATTORNEY GENERAL OF THE COMMONWEALTH OF MASSACHUSETTS in her official capacity,<br><br>Defendant. | C.A. No. 1:20-cv-12090-DJC |

**PLAINTIFF ALLIANCE FOR AUTOMOTIVE INNOVATION'S
RULE 63 MOTION TO RECALL WITNESSES**

On January 7, 2025, the Court ordered the parties to file by January 17, 2025 any request to recall witnesses from the June-July 2021 bench trial on Counts I and II of the Complaint. ECF Nos. 355, 356. Plaintiff Alliance for Automotive Innovation ("Auto Innovators") moves to recall witnesses under Federal Rule of Civil Procedure 63.

**A.    The Court Should Hear from Trial Witnesses Before Rendering a Decision.**

Rule 63 provides: "In a hearing or a nonjury trial, the successor judge ***must***, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness." Fed. R. Civ. P. 63 (emphasis added). "The phrasing of the rule is mandatory." *Union Telecom, LLC v. United States*, 2021 WL 3086212, at *2 (Fed. Cir. July 22, 2021). Among other things, allowing recalled testimony allows the successor judge to assess the credibility and demeanor of witnesses.[1]

---

[1] *See, e.g.*, *In re Reale*, 393 B.R. 821, 826 & n.5 (1st Cir. Bankr. 2008) (approving of a successor bankruptcy judge's decision to proceed on the record only where "neither party asked" to recall witnesses and noting that "observing [witnesses'] demeanor from the cold record would be impossible"); *Mergentime Corp. v. Wash. Area Metro. Transit Auth.*, 166 F.3d 1257, 1266-67

1

**B.     Three Trial Witnesses Gave Material, Disputed Testimony and Are Available.**

Auto Innovators requests that the Court recall three witnesses who gave "material" and "disputed" testimony and are "available to testify again without undue burden." Fed. R. Civ. P. 63.

**Kevin Tierney:** Mr. Tierney is the Vice President of Global Cybersecurity at General Motors Company ("GM"). ECF No. 197, Revised Affidavit of Kevin Tierney ("Tierney Aff."), at ¶ 2. He testified regarding GM's relationship with the National Highway Traffic Safety Administration ("NHTSA") and NHTSA's safety requirements, *id.* at ¶¶ 14-26; GM's suite of cybersecurity protections, *id.* at ¶ 40-77; and GM's inability to comply with the Data Access Law's requirements while retaining those protections, *id.* at ¶ 78-113; *see also* June 14, 2021 Tr. 37-95.

Mr. Tierney's testimony covers the full range of key issues in this case; it is both highly material and disputed. To take just a few examples, he testified about the function and necessity of GM's various cybersecurity measures to protect vehicles' safety features and emissions controls, including a central gateway that manages communications between electronic control units as well as other protections (*e.g.*, challenge-and-response protocols) that manufacturers would need to remove to comply with the Data Access Law, June 14 Tr. 73:14-74:5; Tierney Aff. ¶¶ 37, 63. He also testified about the many problems with the Data Access Law's requirements to standardize access to vehicle systems and remove manufacturers from the authorization chain, including substantially increasing the potential risk for cyber attacks, *Id.* at ¶¶ 39, 52-53, 92, 94, 108-10. And he testified that manufacturers cannot comply with the Data Access Law, and that any effort to do so immediately would require dangerous change to vehicle cybersecurity. *Id.* at

---

(D.C. Cir. 1999) ("[W]hatever latitude successor judges may have to determine credibility from the record in the context of reviewing an original judge's findings, we hold that in the context of making new findings the plain language of Rule 63 controls . . . ."); Fed. R. Civ. P. 63, Advisory Comm. Notes to 1991 Amend. ("The court would . . . risk error to determine the credibility of a witness not seen or heard who is available to be recalled.").

¶¶ 87-90, 94 June 14 Tr. 56:3-56:5; Tierney Aff. ¶¶ 87-90, 94. The Attorney General disputes all of this. *See* ECF No. 236, Def.'s Marked-Up Resp. to Pl.'s Post-Trial Proposed Findings of Fact & Conclusions of Law, at ¶¶ 14, 16, 20, 33, 39, 110, 113, 114, 124,

Mr. Tierney can also testify on recent developments since trial, including the feasibility of the Attorney General's hypothetical means of compliance "by using short-range wireless protocols, such as via Bluetooth," ECF No. 351-1, at 1, and the important distinction between the Data Access Law and Maine's efforts, which require the Maine Attorney General to "designate an independent entity . . . to establish and administer access to vehicle-generated data . . . that is transmitted by [that] standardized access platform," Maine Rev. Stat. tit. 29-A, c. 15, § 1810(2).

**Bryson Bort:** Mr. Bort testified as Auto Innovators' expert on cybersecurity threats, how to protect against those threats, and the significant changes to vehicle systems mandated by the Data Access Law. *See* June 14 Tr. 162-240.[2] He is well-versed to speak to the significant cybersecurity risks at issue here—risks that have only grown since trial.

His material, disputed testimony goes to the heart of this case—whether auto manufacturers can comply with the Data Access Law without compromising vehicle safety and emissions requirements.[3] Mr. Bort testified (and the Attorney General disputes) "that compliance with the law would require Auto Innovators' members to 'alter their vehicles in a manner that would increase the cybersecurity risks to safety- and emissions-critical vehicle systems.'" ECF No. 236,

---

[2] He also testified in a "hot tub" with other experts—a procedure that the Court adopted to allow the experts to interact with each other in real time in response to questions from the Court and counsel. *See* June 16, 2021 Tr. 29-31 (discussing "hot tub" parameters"); *id.* at 47-102 (Bort's "hot tub" testimony).

[3] It also goes to "the issue of associational standing." ECF No. 356. For instance, the Attorney General disputes Mr. Bort's testimony that "[m]ost vehicle architecture approaches and cybersecurity best practices are the same or similar across manufacturers." ECF No. 236, at ¶ 4 (discussing June 14 Tr. 199:19-24).

at ¶ 5 (quoting June 14 Tr. 200:20-201:8).[4]

Mr. Bort also offered material, disputed testimony on how long it would take to create a platform even close to what the Data Access Law envisions, positing that it "would take at least five years"—which the Attorney General disputes. ECF No. 236, at ¶ 124 (discussing June 14 Tr. 200:20-201:8, 232:12-233:5). And the Attorney General disputes Mr. Bort's testimony on her interim methods for compliance—including, for instance, the feasibility and safety impact of disabling telematics, which would cut off firmware over-the-air-updates to safety-critical components, as well as the viability of using Secure Vehicle Interface ("SVI"). ECF No. 236, at ¶¶ 127-28, 131 (discussing ECF No. 200, Revised Affidavit of Bryson Bort, at ¶¶ 96-98, 109-11).

Mr. Bort can also testify about the latest cybersecurity risks and the Attorney General's hypothetical means of compliance "by using short-range wireless protocols, such as via Bluetooth." ECF No. 351-1, at 1.

**Steven Douglas:** When he testified (June 14 Tr. 10-35), Mr. Douglas served as Auto Innovators' Vice President, Energy & Environment. ECF No. 196, Revised Affidavit of Steven Douglas ("Douglas Aff.") at ¶ 2. Though Mr. Douglas has technically retired, he continues to consult for the company. His testimony is material and disputed. This includes matters as basic to this case as the scope of Auto Innovators' presence in the U.S. auto industry—which goes to associational standing; manufacturers' compliance with the existing Massachusetts "Right to Repair" law; and the extent to which independent repair shops already have access to all the data

---

[4] This includes how standardizing access to vehicle systems invites and expands the scope of cybersecurity attacks, ECF No. 236, at CoL ¶ 8 (discussing June 14 Tr. 214:10-20; disputed); how the Data Access Law's prohibition on manufacturer control over authorization to vehicle systems would require removing existing protections like secure gateways, *id.* at CoL ¶ 58 (discussing June 14 Tr. 229:14-22; disputed); and how the law would invite cyber attacks by preventing manufacturers from authenticating user access to critical vehicle components, *id.* at CoL ¶ 60 (discussing June 14 Tr. 210:24-211:3; disputed); *see also* ECF No. 173, Pl.'s Trial Brief, at 6, 9.

necessary to diagnosis, maintain, or repair vehicles on the same terms as dealerships. ECF No. 236, at ¶¶ 1, 99, 101 (disputing Douglas Aff. ¶¶ 2, 12). And it includes the Attorney General's proposed solutions for compliance with the Data Access Law. *See* ECF No. 235, Pl.'s Marked-Up Resp. to Def.'s Post-Trial Proposed Findings of Fact & Conclusions of Law, at ¶ 195 (discussing the dispute over whether the secure data release model ("SDRM") has any bearing on successful immediate compliance with the Data Law). Mr. Douglas can also testify to how compliance efforts switched to Maine and the significance of the changes to the Data Access Law.

      **C.**      **The Court Should Also Hear Limited Testimony from an "Other Witness[]."**

Because this case went to trial back in 2021, some of the witnesses Auto Innovators called at that time have since retired. There have also been several developments since trial. To account for one of these, the Court should also call an "other witness[]" (Fed. R. Civ. P. 63) who could testify, inter alia, to recent developments regarding the Data Access Law's requirements.

**Wayne Weikel:** Mr. Weikel is Auto Innovators' Vice President of State Affairs. As explained in the concurrently filed joint status update, Maine recently adopted a law that addresses one of the Data Access Law's deficiencies by requiring the Maine Attorney General to designate an independent entity to control vehicle data access. Auto Innovators has been working with the aftermarket industry—the same proponents of the Data Access Law—to put together a proposal for that entity. Mr. Weikel has been active in those discussions and could offer important testimony regarding a potential avenue for compliance here as well as how long that avenue for compliance would take to implement to avoid violating the requirements of the federal Vehicle Safety Act.

## CONCLUSION

Plaintiff respectfully requests that the Court (1) recall three available witnesses and (2) supplement with testimony from one additional witness to account for the lapse of time since trial.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1(d), Auto Innovators respectfully requests oral argument on this Motion.

Dated: January 17, 2025

Respectfully submitted,

ALLIANCE FOR AUTOMOTIVE INNOVATION

By its attorneys,

 */s/ Laurence A. Schoen*
Laurence A. Schoen, BBO # 633002
Elissa Flynn-Poppey, BBO# 647189
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY, AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
lschoen@mintz.com
eflynn-poppey@mintz.com

John Nadolenco (*pro hac vice*)
Erika Z. Jones (*pro hac vice*)
Jason D. Linder (*pro hac vice*)
Daniel D. Queen (*pro hac vice*)
Eric A. White (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
Tel: (202) 263-3000
jnadolenco@mayerbrown.com
ejones@mayerbrown.com
jlinder@mayerbrown.com
dqueen@mayerbrown.com
eawhite@mayerbrown.com

Charles H. Haake (*pro hac vice*)
Jessica L. Simmons (*pro hac vice*)
ALLIANCE FOR AUTOMOTIVE INNOVATION
1050 K Street, NW
Suite 650
Washington, DC 20001
Tel: (202) 326-5500
chaake@autosinnovate.org
jsimmons@autosinnovate.org

## RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), I hereby certify that I have conferred with Defendant's counsel and attempted in good faith to resolve or narrow the issues presented by this Motion, and that Defendant has stated that the Attorney General plans to oppose this motion.

*/s/ Laurence A. Schoen*
Laurence A. Schoen

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on January 17, 2025.

*/s/ Laurence A. Schoen*
Laurence A. Schoen